OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Kenneth E. Saunders, filed February 8, 2008. On June 22, 2007, Saunders was indicted on one count of possession of *Page 2 
crack cocaine, in an amount greater than 10 grams but less than 25 grams, in violation of R.C. 2925.11(A), a felony of the second degree. On September 20, 2007, Saunders pled not guilty. On October 11, 2007, Saunders filed a Motion to Suppress. Following a hearing on November 9, 2007, the trial court overruled Saunders' Motion on December 11, 2007. Following a trial to a jury, Saunders was found guilty. On January 31, 2008, the trial court sentenced Saunders to a mandatory term of four years, suspended his driver's license for a term of five years, and ordered Saunders to pay a mandatory fine of $7,500.00. The trial court noted that this was "at least" Saunders' eighth felony offense, and that he had only been out of prison 33 days before his arrest on the current charge.
 {¶ 2} Saunders' appellate counsel filed a brief pursuant to Anders v.California (1967), 386 U.S. 738, 87 S.Ct. 1396, 19 L.Ed.2d 493, stating that he could find no meritorious issues for appellate review. We notified Saunders of his counsel's representations and afforded him ample time to file a pro se brief. Saunders filed his brief on October 2, 2008. The State filed a response on December 29, 2008. This case is now before us for our independent review of the record. Penson v.Ohio (1988), 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300.
 {¶ 3} The events giving rise to this matter began on March 15, 2007, at approximately 12:45 a.m., when Deputy Douglas Phillips of the Montgomery County Sheriff s Department was patrolling at the intersection of Castlewood Avenue and Wilton Avenue, an area known for drug and prostitution activity. Phillips observed a white Pontiac proceeding down Wilton Avenue alongside a female pedestrian. It appeared to Phillips that the driver of the Pontiac was speaking to the female pedestrian. Phillips decided to approach the pedestrian, and when he turned onto Wilton, the Pontiac turned right into a parking lot at the corner of Wilton and Nottingham, *Page 3 
behind two apartment buildings. Philips asked the pedestrian, "What's going on?" She replied that the person in the Pontiac was talking to her, but as soon as the person saw Phillips, he drove away.
 {¶ 4} Phillips proceeded down Wilton, and he observed the Pontiac parked in the parking lot, unoccupied. Deputy Thomas Feehan arrived on the scene, and the two deputies attempted to verify that the Pontiac was not stolen. While the Pontiac did not exhibit "a peeled column or the door locks busted out," the officers were unable to run the Indiana license plate on their computer, and they were unable to determine the registered owner of the vehicle. The deputies next retreated to the end of Wilton to observe the Pontiac for the return of the driver. According to Phillips at the hearing on the motion to suppress, he "wanted to sit at the end of the road and see if this person came back. I thought they were trying to avoid me."
 {¶ 5} In approximately 30 minutes, the deputies observed a gray van turn onto Wilton and turn out its headlights. The van pulled in front of the parking lot where the Pontiac was parked, and it stopped. Saunders emerged from the passenger side of the van and approached the Pontiac. According to Phillips at the suppression hearing, "Once we saw the person walk over to the car, we started driving down in that direction. When I got behind the van, I activated my lights." Phillips testified that the van was stopped "still in front of the lot." Phillips stated that Feehan was behind him in his cruiser. Phillips testified, at the suppression hearing, he felt "the person's behavior up to that point was kind of suspicious and [Phillips] wanted to talk to the person and see what was going on."
 {¶ 6} Once Phillips activated his lights, he observed Saunders exit the Pontiac. The gray van "pulled on into the lot." Phillips observed Saunders run to the driver's side of the van. *Page 4 
The van pulled into a parking spot, and as Saunders ran to the front of the van, Phillips observed Saunders make a throwing motion toward an adjacent area, and Phillips suspected Saunders had thrown "some type of contraband, a weapon, narcotics, something like that." Phillips ordered Saunders to the ground, placed him in handcuffs, and patted him down for weapons. With his flashlight, Phillips investigated the area into which he observed Saunders make the throwing motion, and there he observed a baggie containing a white, chunky substance that he believed to be crack cocaine. Phillips asked Feehan to retrieve the baggie while Phillips placed Saunders into the cruiser. Phillips then contacted his supervisor and placed Saunders under arrest. The substance was not field tested, but Phillips tagged it into the property room at the crime laboratory for testing.
 {¶ 7} In overruling Saunders' motion to suppress, the trial court determined that Saunders was not "seized" until he made the throwing motion in the parking lot. The trial court also noted that Phillips has been with the Montgomery County Sheriffs Department for approximately 10 years. "He has made numerous crack cocaine and powder cocaine arrests. Deputy Phillips served as a detective in the organized crime unit for approximately one and a half years. Approximately one year ago he attended schooling in Mississippi relating to the field testing of and detection of narcotics. He has seen crack cocaine more than one hundred times."
 {¶ 8} At trial, Feehan testified that he also observed Saunders "make a kind of an underhand tossing motion towards a neighboring yard," before Phillips secured Saunders. Feehan testified that he observed an object leave Saunders' hand, but he was unable to identify it. When Phillips asked Feehan to retrieve the object, Feehan found the baggie of drugs about five feet away on the other side of a chain link fence. Feehan testified that there was no other *Page 5 
debris in the area where the baggie was found.
 {¶ 9} At trial, Phillips identified State's Exhibit 1A and 1B as the baggie and crack cocaine Feehan retrieved, along with the tracking card Phillips filled out. The tracking card listed Saunders' name and address, the suspected identity of the substance (crack cocaine), Phillips' name, and then the chain of custody.
 {¶ 10} Also at trial, Julie A. Bowling, a forensic chemist and document examiner at the Dayton crime laboratory testified. According to Julie, she identified the suspected substance submitted to the laboratory by Phillips, noting that it weighed 11.18 grams to a reasonable degree of scientific certainty. Bowling then performed a field test on the substance, obtaining a positive result for the presence of cocaine. Julie then performed a test called infrared spectrophotometry, and a test called gas chromotography mass spectroscopy. She testified that test results revealed the entire submission contained crack cocaine. When Julie completed her testing, the items "were packaged and placed back into the envelope and then it was sealed up and returned to the property room awaiting to go back to the department."
 {¶ 11} Saunders asserts two assignments of error. His first assignment of error is as follows:
 {¶ 12} "THE DEFENDANT'S SIXTH AMENDMENT RIGHT OF THE CONFRONTATION CLAUSE WAS VIOLATED AS GUARANTEED BY THE US. CONSTITUTION."
 {¶ 13} Saunders argues that the statement of the female pedestrian, as recited by Phillips at the hearing on the motion to suppress, gave Phillips probable cause to approach the parking lot and the gray van, and that he was denied his right to confront her. The State responds that *Page 6 
Phillips "did not need probable cause or even reasonable suspicion of criminal activity to approach and speak to Saunders in the parking lot." The State further asserts that at "no time was Saunders restrained or prohibited from movement as a result of any particular show of authority by the deputies. It was not until after Saunders avoided the deputies and discarded a possible weapon or contraband that Deputy Phillips ordered Saunders to the ground and seized him." Finally, the State asserts that Saunders does not have a Sixth Amendment right to confrontation at a pretrial hearing.
 {¶ 14} We initially note, as the State asserts, "`[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.'" City of Maumee v.Weisner, 87 Ohio St.3d 295, 298, 720 N.E.2d 507, 1999-Ohio-68. Further, "The Supreme Court has repeatedly distinguished between the scope of defendant's right to confrontation in trial and pretrial proceedings. (Internal citations omitted). The Supreme Court has recognized that the right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial discovery. (Internal citation omitted). State v. Williams (Jan. 27, 1994), 97 Ohio App.3d 289, 291, 646 N.E.2d 836.
 {¶ 15} The female pedestrian's statement was admissible hearsay at the suppression hearing, and Saunders did not have a Sixth Amendment right to confront her. Further, there is nothing in this record to suggest that she identified Saunders as the occupant of the white Pontiac, and thereby, as Saunders argues, provided probable cause for the officers to approach Saunders in the parking lot.
 {¶ 16} As the State correctly argues, "`Contact between police officers and the public *Page 7 
can be characterized in different ways. The first manner of contact and the least restrictive is contact that is initiated by a police officer for purposes of inquiry only. `[M]erely approaching an individual on the street or in another public place [,]' asking questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. UnitedStates v. Flowers (C.A. 6, 1990), 909 F.2d 145, 147. The United States has repeatedly held that mere police questioning does not constitute a seizure for Fourth Amendment purposes." State v. Lawson, Montgomery App. No. 22557, 2009-Ohio-62, ¶ 13. "Routine police practices like this constitute consensual encounters as long as the police officer has not, by physical force or a display of authority, restrained the person's liberty such that a reasonable person would feel free to walk away. (Internal citations omitted). Whether a reasonable person would fee free to leave is dependent on the totality of the circumstances of the case. Nevertheless, the Supreme Court has recognized several factors that indicate that an encounter is not consensual, including: the threatening presence of several officers, the officer's wearing of a uniform, the display of a weapon, the touching of the person, the use of language or a tone of voice conveying that compliance is compelled, and approaching the person in a non-public place. (Internal citation omitted).
 {¶ 17} "As soon as a reasonable person would not feel free to leave, the encounter belongs in one of the following categories in which the guarantees of the Fourth Amendment are implicated. The second category of police-citizen contact consists of investigatory detentions also known as `Terry stops.' (Internal citation omitted). * * *
 {¶ 18} "* * * where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that persons who with he is dealing may be armed and presently dangerous, where in the course of *Page 8 
investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
 {¶ 19} "Such a search is a reasonable search under theFourth Amendment and any weapons seized may properly be introduced in evidence against the person from whom they were taken.
 {¶ 20} "* * * The Court went on to nebulously define reasonable suspicion as `something more than an inchoate or unparticularized suspicion or `hunch,' but less that the level of suspicion required for probable cause. * * *
 {¶ 21} "The final category of police-citizen contact is the arrest. * * * An arrest is only valid under the Fourth Amendment when the officer has probable cause to believe that the subject committed a crime or was about to commit a crime." State v. Schott (May 16, 1997), Darke App. No. 1415.
 {¶ 22} The record reveals that the officers approached Saunders to make inquiry regarding his activities, and not because the female pedestrian gave them probable cause to do so. Phillips testified that he was "kind of suspicious," and he wanted to talk to Saunders. As the trial court determined, Saunders was not seized "at any time until after he had made a throwing motion." Phillips did not do anything to initiate the stop of the van. The van was stopped as the officers approached it, and Saunders, the passenger, had exited the van. The officers did not draw their guns or make any other show of force, other than the activation of Phillips' lights. *Page 9 
Although the activation of the officer's overhead lights constituted a show of authority, absent submission to that authority, there has been no seizure. California v. Hodari (1991), 499 U.S. 621, 111 S.Ct. 1547,113 L.Ed.2d 690, at syllabus ("To constitute a seizure of the person, just as to constitute an arrest — the quintessential `seizure of the person' under Fourth Amendment jurisprudence — there must beeither the application of physical force, however slight, or, where that is absent, submission to an officer's `show of authority' to restrain the subject's liberty.")
 {¶ 23} Phillips made no command to Saunders nor restrained his liberty until Saunders, while running, threw the baggie in plain view of the officers and accordingly, no seizure took place implicating theFourth Amendment until the throwing motion was observed, and Saunders was ordered to the ground. "The Plain View Doctrine is a well-established exception to the warrant requirement. Evidence in plain view is subject to seizure when the intrusion affording the plain view is lawful (or the officer is lawfully in place) and the incriminating nature is immediately apparent. (Internal citations omitted). `Immediately apparent' means the police have probable cause to associate an object with criminal activity. An officer may rely on training and experience in recognizing evidence of a crime." State v. Buckner, Montgomery App. No. 21892, 2007-Ohio-43392. Since Phillips had a right to approach Saunders, and since Saunders' conduct, and not the female pedestrian's statements, provided probable cause for Saunders' arrest, we overrule Saunders' first assignment of error.
 {¶ 24} Saunders' second assignment of error is as follows:
 {¶ 25} "INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL DID NOT OBJECT TO HEARSAY TESTIMONY OF STATE WITNESS AS TO WHETHER SUBSTANCE WAS COCAINE, AND THE CHAIN OF CUSTODY EVIDENCE." *Page 10 
 {¶ 26} Saunders argues that his counsel was ineffective for failing to object to Phillips' testimony regarding the identity of the substance in the baggie and to the State's evidence regarding chain of custody of the drugs. Saunders argues, "Due to the error's [sic] stated the Defendant's counsel should be ordered to file a (supplemental brief) on the issue's [sic] stated."
 {¶ 27} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). State v. Mitchell, Montgomery App. No. 21957, 2008-Ohio-493, ¶ 31.
 {¶ 28} According to Saunders, his counsel should have objected to Phillips' testimony about the identity of the crack cocaine. Upon review, we find no ineffective assistance of counsel. The record reflects that Phillips has extensive drug enforcement and arrest experience, having seen crack cocaine over 100 times. Phillips has considerable training, as well, regarding the identification of narcotics. In light of his experience, Saunders' counsel may have *Page 11 
reasonably concluded that Phillips could capably testify regarding his opinion that the identity of the white chalky substance, found in plain view in an area known for drug activity, was crack cocaine. In any event, Saunders has failed to demonstrate how the outcome of the proceeding would have been different had defense counsel objected to Phillips' testimony.
 {¶ 29} Saunders also argues that his counsel was ineffective when he did not object to the admission of the crack cocaine because the State failed to establish the proper chain of custody. "`The state has the burden in establishing the chain of custody of a specific piece of evidence. (Internal citations omitted). `The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid. R. 901(A). In order to meet its burden in establishing the chain of evidence, `the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur.' (Internal citations omitted). Breaks in the chain of custody go to the weight afforded the evidence — not the admissibility of the evidence.'State v. Griffin, Montgomery App. No. 20681, 2005-Ohio-3698." State v.Wilson, Montgomery App. No. 20910, 2005-Ohio-6666, ¶ 41.
 {¶ 30} As the State asserts, Phillips and Bowling established the chain of custody of the crack cocaine at trial. Phillips testified that he personally submitted the drugs to the crime laboratory. He identified the tracking card, as well as the baggie and the crack cocaine. Bowling testified that she retrieved the items from the crime laboratory, opened the package and verified the contents, and tested the drugs. When the testing was completed, Bowling packaged and resealed the exhibit, placing it into the property room until it was released again to Phillips for trial. In other words, the State proved that it was reasonably certain that substitutions, *Page 12 
alterations or tampering did not occur, and Saunders' counsel's failure to object to the testimony does not amount to ineffective assistance, nor does he indicate how the outcome of the trial would have been different, had he so objected.
 {¶ 31} Finally, we note, in the body of Saunders' second assignment of error regarding ineffective assistance of counsel, Saunders argues that the State failed to establish his possession of the crack cocaine at trial.
 {¶ 32} R.C. 2925.11(A), pursuant to which Saunders was convicted, provides, "No person shall knowingly obtain, possess or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22. "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "`Possession of a drug may be either actual physical possession or constructive possession. (Internal citation omitted). A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. * * * In terms of `knowing possession,' knowledge must be determined from all of the facts and circumstances surrounding the incident.'" (Internal citations omitted.)State v. Price, Montgomery App. No. 22380, 2008-Ohio-4746, ¶ 61.
 {¶ 33} Phillips observed Saunders make a throwing motion, and Feehan observed Saunders toss an object that Feehan witnessed leave Saunder's hand. Saunders clearly had *Page 13 
control over the item before he tossed it. The baggie containing the drugs was found merely five feet away from the toss in plain view, and there was no other debris or items in the area. This testimony, which the jury clearly believed, is sufficient to establish Saunders' possession of the crack cocaine.
 {¶ 34} Saunders' second assignment of error is overruled.
 {¶ 35} In addition to the review of Saunders' assigned errors, we have conducted a thorough and independent review of the trial court's proceedings and have found no error having arguable merit. The judgment of the trial court is affirmed.
BROGAN, J. and GRADY, J., concur. *Page 1