[Cite as *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

THE STATE OF OHIO,                         :

     Appellee,                            :          C.A. CASE NO. 2010 CA 33

v.                                         :          T.C. NO.  10CR119

SANTIAGO,                                  :          (Criminal appeal from
                                          Common Pleas Court)
     Appellant.                          :

**O P I N I O N**

Rendered on the 14<u>th</u> day of <u>October</u>, 2011.

     Gary Nasal, Miami County Prosecuting Attorney, and Robert E. Long III, Assistant Prosecuting Attorney, for appellee.

     Cheryl L. Collins, for appellant.

     FROELICH, Judge.

     **{¶ 1}**  David Santiago Jr. was found guilty on his no-contest plea of trafficking in drugs after the trial court overruled his motions to suppress evidence and to withdraw his plea.  Santiago appeals from his conviction.

     **{¶ 2}**  In the early morning hours of December 6, 2009, Santiago was stopped in Troy after an officer saw him driving left of center.  Based on his interaction with the police officer, Jeff Kunkleman, Santiago was asked to perform field sobriety tests, all of which he failed.  He then submitted to a breath test, which showed a blood alcohol level of .147.  He was arrested for driving under the influence.

     **{¶ 3}**  After placing Santiago in the cruiser, Kunkleman inventoried Santiago's car

before having it towed. Kunkleman opened Santiago's glove box using keys that Santiago had thrown on the dash, and he found crack cocaine inside.[1] After he was informed of his rights, Santiago was interviewed by Kunkleman and stated that the crack was his and that he "had gotten the crack * * * to try to make a little extra money for the holidays." Santiago denied that he used crack or regularly sold it.

{¶ 4} Santiago was indicted for trafficking in drugs, in violation of R.C. 2925.03(A)(2) and 2925.03(C)(4)(e), and he pleaded not guilty. He filed a motion to suppress all evidence against him on the grounds that his detention and arrest had been illegal. After conducting a hearing, the trial court overruled his motion to suppress. Santiago then changed his plea to no contest and was found guilty. One day after entering his plea, however, he contacted his attorney about withdrawing his plea. When this matter was raised with the court at the sentencing hearing several weeks later, the court refused to allow Santiago to withdraw his plea, concluding that he had "simply had a change of heart and [was] attempting to delay the proceedings."

{¶ 5} Santiago was sentenced to three years in prison, his operator's license was suspended, and he was ordered to pay restitution.

{¶ 6} Santiago appeals from his conviction, raising five assignments of error.

{¶ 7} Santiago's first assignment of error states:

{¶ 8} "The trial court erred in overruling defendant's motion to suppress when the officer lacked reasonable, articulable suspicion to conduct field sobriety testing and prolonged the stop beyond the time period necessary to investigate any suspicion of a

---

[1]"White powder" was also found in the glove box, but no further mention of this substance was made during the court proceedings.

minor traffic offense."

{¶ 9} Santiago claims that Officer Kunkleman did not have a reasonable, articulable suspicion of illegal activity justifying the length of his detention, although he seems to concede that his traffic violation justified the stop. In other words, he appears to argue that there was no reasonable, articulable suspicion justifying the field sobriety tests.

{¶ 10} "[A] police officer in a marked cruiser may stop a vehicle for any traffic violation no matter how slight, for the purpose of issuing a citation for the violation." *State v. Spillers* (Mar. 24, 2000), Darke App. No. 1504, 2000 WL 299550. Santiago does not dispute that he committed a traffic violation; he was properly stopped for the purpose of issuing a citation.

{¶ 11} However, the traffic violation did not necessarily give the officer the right to subject Santiago to the further intrusion represented by the administration of field sobriety tests; the officer had to have a reasonable, articulable suspicion that Santiago was driving the vehicle while under the influence in order to justify the administration of field sobriety tests. Id.; *State v. Hido*, Clark App. No. 10 CA 46, 2011-Ohio-2560, ¶ 9.

{¶ 12} In the cases upon which Santiago relies, we have held that an odor of alcohol, coupled with a de minimis traffic violation, glassy or bloodshot eyes, and an admission to having consumed one or two beers, was insufficient to create a reasonable, articulable suspicion of driving under the influence and therefore to justify further detention in order to conduct field sobriety tests. *Spillers,* 2000 WL 299550; *State v. Dixon* (Dec. 1, 2000), Greene App. No. 2000-CA-30, 2000 WL 1760664. See also *State v. Swartz,* Miami App. No. 2008CA31, 2009-Ohio-902. This court has held, however, that a strong odor of an alcoholic beverage, without other significant indicia of intoxication, may be sufficient to

3

provide an officer with reasonable suspicion of driving under the influence. See *State v. Marshall* (Dec. 28, 2001)*,* Clark App. No. 2001CA35, 2001 WL 1658096 (holding that a strong odor of alcohol, coupled with high speed and red eyes, created a reasonable suspicion justifying field sobriety tests); *State v. Schott* (May 16, 1997), Darke App. No. 1415, 1997 WL 254141 (holding that a strong odor of alcohol alone can create a reasonable, articulable suspicion of intoxication adequate to require an individual to submit to field sobriety tests).

**{¶ 13}** Whether an officer had a reasonable, articulable suspicion to administer field sobriety tests is a "very fact-intensive" determination. *State v. Wells,* Montgomery App. No. 20798, 2005-Ohio-5008, ¶ 9. We determine the existence of reasonable suspicion of criminal activity by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* Montgomery App. No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88.

**{¶ 14}** At the suppression hearing, Officer Kunkleman testified that he observed Santiago "driving left of center, driving down the middle of the roadway" in the early morning hours of December 6, 2009; there were two passengers in the car. Kunkleman followed the car through several turns in a residential area, but did not observe any additional traffic violations. The car pulled over twice, but no one got out, a circumstance that Kunkleman found "suspicious." When one person did get out of the car and walk between houses, Kunkleman decided to initiate contact with the driver (Santiago). Kunkleman testified that Santiago's eyes were "tired" and "glassy" and that an "odor of alcohol" was coming from the vehicle. While Santiago was in the car, Kunkleman could not

4

determine whether the odor was coming from Santiago or from his passenger. Santiago denied that he had been drinking, but Kunkleman observed a bottle of gin in the back seat; the bottle was half empty but capped, and the passenger claimed ownership of the bottle of gin. Santiago attempted to put his keys back in the ignition as if to start the car while talking with Kunkleman, and he argued with Kunkleman about getting out of the car, although he eventually did so. When Santiago stepped out of the vehicle at Kunkleman's request, Kunkleman determined that he (Kunkleman) could "smell alcohol on, an alcoholic beverage on his breath now, or the odor of an alcoholic beverage" on Santiago.

{¶ 15} The odor of an alcoholic beverage emanating from Santiago's vehicle, the bottle of alcohol visible within the vehicle, Santiago's tired and glassy eyes, his traffic violation and suspicious behavior in pulling off the road two times, and his somewhat uncooperative attitude toward Officer Kunkleman justified further investigation. Moreover, when Santiago exited the vehicle, Kunkleman was able to determine that Santiago— independent of the car or someone else in the car—smelled of an alcoholic beverage. Under the totality of the circumstances, Kunkleman had a reasonable, articulable suspicion that Santiago was driving under the influence, which justified his further detention for field sobriety tests.

{¶ 16} Other courts have similarly held that certain traffic violations, coupled with glassy eyes, an odor of alcohol, and open or partially consumed alcohol inside a vehicle created a reasonable, articulable suspicion justifying further investigation. See *State v. Purtee*, Logan App. No. 8-04-10, 2006-Ohio-6337; *Strongsville v. Minnillo*, Cuyahoga App. No. 80948, 2003-Ohio-162.

{¶ 17} The trial court did not err in refusing to suppress the results of the field

5

sobriety tests or the breath test, the items found in the vehicle, or Santiago's subsequent statements to the police on the ground that his detention was unlawful.

**{¶ 18}** The first assignment of error is overruled.

**{¶ 19}** Santiago's second assignment of error states:

**{¶ 20}** "The trial court erred in overruling appellant's motion to suppress because the officer did not have probable cause to seize appellant after appellant initially refused to engage in field sobriety testing."

**{¶ 21}** Santiago argues that he was seized by Officer Kunkleman before any field sobriety tests had been conducted, that Kunkleman did not yet have probable cause to arrest him at that point in their interaction, and thus that he was unlawfully detained for the field sobriety tests. Santiago's argument refers to the undisputed fact that Kunkleman "warned him" and "told him [Santiago] to stop" when Santiago attempted to place the key in the ignition of the car after being asked to exit from his car for field sobriety tests. Santiago argues that a reasonable person would not have felt free to leave after this point.

**{¶ 22}** "An arrest is a substantial intrusion upon the arrestee's protected liberty interests, and therefore requires the full measure of probable cause to satisfy the Fourth Amendment to the United States Constitution. A brief, investigative stop is far less intrusive, and requires a correspondingly smaller quantum of probable cause for its justification, described as reasonable and articulable suspicion. The administration of field sobriety tests is intermediate between these two in terms of the intrusion it represents upon the subject's protected liberty interest. See *State v. Smethurst* (Feb. 13, 1995), Clark App. No. 94-CA-24, 1995 WL 108956, and * * * *Spillers* [2000 WL 299550]. The imposition upon the subject's time is apt to be not much greater than the imposition represented by the

6

typical investigative stop, but the indignity inflicted upon the subject's person, while far less than the indignity represented by an arrest, is greater than any indignity inflicted by the typical investigative stop." *State v. Kissinger*, Montgomery App. No. 23636, 2010-Ohio-2840, ¶ 24. Nonetheless, an officer's decision to conduct field sobriety tests need only be justified by a reasonable, articulable suspicion. Id. at ¶ 26. See also *Columbus v. Shepherd*, Franklin App. No. 10AP-483, 2011-Ohio-3302, ¶ 23; *State v. Trevarthen*, Lake App. No. 2010-L-046, 2011-Ohio-1013, ¶ 15.

**{¶ 23}** Santiago's argument that he was unlawfully detained because Officer Kunkleman seized him without probable cause before conducting the field sobriety tests is without merit. As we discussed under the first assignment of error, Kunkleman had a reasonable, articulable suspicion that justified further investigation, including the field sobriety tests; he did not need probable cause. The trial court did not err in overruling Santiago's motion to suppress on the basis that he had been "seized" without probable cause.

**{¶ 24}** The second assignment of error is overruled.

**{¶ 25}** Santiago's third, fourth, and fifth assignments of error relate to his plea.

**{¶ 26}** "The trial court erred in accepting appellant's change of plea when appellant indicated his dissatisfaction with the advice, counsel and competence of his appointed attorney and the trial court failed to make any inquiry into the reasons for appellant's dissatisfaction prior to accepting the plea.

**{¶ 27}** "The trial court abused its discretion in denying appellant's motion to withdraw his plea prior to sentencing.

**{¶ 28}** "Appellant was denied the effective assistance of counsel when his attorney

7

refused to file a motion to withdraw appellant's plea prior to sentencing and his attorney failed to participate in the hearing on appellant's motion to withdraw his plea."

{¶ 29} Santiago contends that the trial court erred in accepting his plea of no contest without inquiring into his expressed dissatisfaction with his attorney. He also contends that the trial court erred in denying his presentence motion to withdraw his plea.

{¶ 30} On September 20, 2010, the court held a hearing at which Santiago's attorney stated that Santiago wanted to enter a no-contest plea. After this representation was made, the court proceeded to question Santiago at some length, as required under Crim.R. 11. Santiago answered affirmatively when asked whether his no-contest plea was voluntary. After several more questions, the following exchange occurred:

{¶ 31} The Court: "Has your attorney or attorneys explained everything to you and answered all our [sic] questions for you?

{¶ 32} Santiago: "Yes.

{¶ 33} The Court: "Satisfied with their advice, counsel and competence in this case?

{¶ 34} Santiago: "Not, no, not really, but—

{¶ 35} The Court: "Not really?

{¶ 36} Santiago: "No.

{¶ 37} The Court: "Well, you're making your plea voluntarily, though, is that correct?

{¶ 38} Santiago: "Yes."

{¶ 39} The court then moved on to discuss other issues without any further attempt to probe or understand Santiago's dissatisfaction with his representation. At the end of the hearing, the court accepted Santiago's no-contest plea and ordered a presentence

investigation.

{¶ 40} When Santiago returned to court for sentencing several weeks later, his attorney, who was a different attorney from the same office, indicated to the court that Santiago had contacted his office on September 21 (the day after he pleaded no contest), indicating that he wanted to withdraw his plea. According to the attorney who was present at sentencing, the attorney who had represented Santiago in some of the earlier proceedings purportedly responded to Santiago's request to withdraw his plea by telling Santiago that "he [the attorney] thought that it was a good plea, it has been freely and voluntarily given, and it was * * * not his intention to file a Motion to Withdraw the plea."

{¶ 41} The court then inquired of Santiago why he wanted to withdraw his plea. In response, Santiago objected to the fact that he had been charged with trafficking "when it was in one bag" and he "wasn't trying to sell it." The court responded that "if you get up to a certain amount, it still comes under the trafficking section of the code." Santiago also pointed out that he had never signed the statement taken by the police officer, in which he purportedly admitted that he intended to sell the drugs. The court stated: "Aren't these matters you knew before you changed the plea? * * * [H]ow's this anything new, since the time you changed your plea?" Santiago explained that he had been on the phone with someone before he came into court to enter his plea and had "thought they told [him] to put in a no-contest plea," but he realized later in the day that he had misunderstood, and the person on the phone had intended for him to plead not guilty.[2]

{¶ 42} The following discussion ensued:

---

[2]No other information is contained in the record as to the identity or qualifications of the person who advised Santiago by phone.

9

**{¶ 43}** The Court: "Don't you remember going, sitting here with me, and I asked you questions and asked if you understood what was going on, if you had any complaints about your attorneys, were satisfied with their advice, you were making your no contest plea voluntarily, explained the penalty to you. Do you understand that?

**{¶ 44}** Santiago: "Yeah.

**{¶ 45}** The Court: "Yeah. Well, why didn't you speak up then, if that's what you're claiming now?

**{¶ 46}** Santiago: "All right. I didn't understand, really, like—

**{¶ 47}** The Court: "Yeah. I don't think it's a matter of misunderstanding. I think it's a matter of change of heart. I think you changed your heart. So, you didn't want to go, change your plea, probably, just to try to delay matters. That's what I'm thinking.

**{¶ 48}** * * *

**{¶ 49}** Santiago: "I feel as though, I feel as though I'm just taking it to trial, but, that's, that's what I want to do.

**{¶ 50}** The Court: "And I'm asking you that since the time you changed your plea, what factors have occurred which would, should result in my granting your request to withdraw your former plea? That's what I'm asking. Since you changed your plea. Because I know what the change of plea form says.

**{¶ 51}** Santiago: "All right. I have not, I was doing a lot of reading and stuff too, so—

**{¶ 52}** The Court: "Doing a lot of what?

**{¶ 53}** Santiago: "I was doing a lot of reading of the law and stuff like that, so you know.

10

**{¶ 54}** The Court: "Reading. Yeah. Didn't you have a chance to do your reading, before you changed your plea?

**{¶ 55}** Santiago: "Yeah, I had, but I didn't then.

**{¶ 56}** The Court: "Well, that's your problem, not mine. There you go. * * * [O]n your oral request to withdraw your former plea of no contest, uh based on the factors that you have indicated to me here, Mr. Santiago, I will overrule those."

**{¶ 57}** A defendant's motion to withdraw a guilty plea, made before sentencing, should be freely and liberally granted, provided that the movant demonstrates a reasonable and legitimate basis for the withdrawal. *State v. Xie* (1992), 62 Ohio St.3d 521, 526, 584 N.E.2d 715. "There are numerous additional factors which should be weighed in considering a motion to set aside a plea * * * before sentencing, some of which are set out in [*State v.*] *Peterseim* [(1980), 68 Ohio App.2d 211] as follows: (1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, and (4) whether the trial court gave full and fair consideration to the motion. We would also add: (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, and (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges. Obviously, the list is not exhaustive, and other factors will appear to trial and appellate courts depending upon the merits of each individual case." (Citations omitted.) *State v. Fish* (1995), 104 Ohio App.3d 236, 240.

**{¶ 58}** Although a motion to withdraw a plea should be freely and liberally granted, a

11

defendant does not have an absolute right to withdraw his plea prior to sentencing. Id. A trial court must hold a hearing on the motion to determine whether a reasonable and legitimate basis exists for the withdrawal. Id. A trial court may satisfy the requirement for a full and fair hearing on a motion to withdraw a plea by allowing the defendant and his attorney to speak at a sentencing hearing and to explain the basis for the motion. *State v. Burnett,* Montgomery App. No. 20496, 2005-Ohio-1036, ¶ 20-21.

{¶ 59} The decision whether to grant or deny a presentence request to withdraw a guilty plea is a matter resting within the trial court's sound discretion. *Xie,* 62 Ohio St.3d at 526, 584 N.E.2d 715. Such decisions will not be disturbed on appeal absent a showing that the trial court abused its discretion by acting in an unreasonable, arbitrary, or unconscionable manner. Id. A "change of heart" is not sufficient justification to permit withdrawal of a guilty plea. Id., citing *State v. Lambros* (1988), 44 Ohio App.3d 102, and *State v. Flowers,* Montgomery App. No. 22751, 2009-Ohio-1945, ¶ 11-14.

{¶ 60} With these considerations in mind, we turn to Santiago's motion to withdraw his plea. We are troubled in several respects by the handling of Santiago's plea and his request to withdraw that plea.

{¶ 61} First, during the hearing at which Santiago entered his no-contest plea, he expressed dissatisfaction with his attorney, yet the court did not explore the reason for or the nature of Santiago's dissatisfaction. The court simply responded by having Santiago affirm the voluntariness of his plea. Later, when Santiago sought to withdraw his plea, the trial court referred to the prior plea colloquy, asking Santiago whether he remembered how the judge had asked him whether he "had any complaints about [his] attorneys," and queried, "Why didn't you speak up then?" In fact, Santiago had spoken up to express

12

dissatisfaction with his attorney; the court's conclusion that Santiago had an opportunity to fully address this issue mischaracterized what had transpired at the plea hearing.

**{¶ 62}** Second, when the trial court asked Santiago his reasons for wanting to withdraw his plea, Santiago stated: "[T]hey charged me with trafficking. * * * I don't see how it was trafficking, when it was in one bag, it was not * * * individually—it was not, I was not trying to sell it." The judge responded: "[I]t doesn't matter. * * * [I]f you get up to a certain amount, it still comes under the trafficking section of the code."

**{¶ 63}** R.C. 2925.03 ties the degree of the offense to the amount of drugs possessed, but it does not define trafficking strictly in terms of possession of a bulk amount.[3] Although we recognize that Santiago made a statement to the police that he had been trying to make extra money by selling the drugs, and his motion to suppress had been overruled, he also denied at the sentencing hearing that he had made such a statement and claimed that he had never signed the alleged statement. While there may have been other reasons to reject Santiago's challenge to the characterization of the offense as trafficking, the trial court's conclusion that the amount of drugs required a charge of trafficking was incorrect.

**{¶ 64}** Third, we have some potential concerns as to the interaction between Santiago and his attorneys. According to the attorney who appeared with Santiago at the sentencing hearing (at which the motion to withdraw his plea was discussed), Santiago contacted the attorney who had represented him when his plea was entered only one day after the plea and expressed his desire to withdraw the plea. The attorney apparently

---

[3]See former R.C. 2925.03(A)(4), (6), and (9), which defined trafficking in drugs as possession of a controlled substance in excess of the bulk amount or in various multiples thereof.

refused to file such a motion. In a letter to Santiago, the attorney indicated that "he [the attorney] thought that it was a good plea, it has been freely and voluntarily given, and it was * * * not his intention to file a Motion to Withdraw the plea."[4]

{¶ 65} We note that Santiago's attorney at the sentencing hearing did not actively participate or advocate on behalf of Santiago's request; Santiago spoke for himself, and neither Santiago nor his attorney (who was not the attorney at the plea) pointed out to the court that Santiago's concerns about his representation had not been fully addressed at the prior hearing, as the court assumed. Although an attorney is not required to file or advocate for a motion that he or she considers to be frivolous or meritless, the liberal standard for withdrawal of a presentence motion to withdraw a plea and the facts of these proceedings may have raised a colorable claim. However, we do not conclude that counsel was ineffective or that the outcome of Santiago's motion to withdraw his plea would have been different if counsel had filed the motion or argued it to the court. *State v. Drake*, Cuyahoga App. No. 93761, 2010-Ohio-1065, ¶ 16; *State v. Carr*, Franklin App. No. 01AP-849, 2002-Ohio-1314; *State v. Jones* (Apr. 30, 1999), Clark App. No. 98-CA-42, 1999 WL 253207.

{¶ 66} In summary, considering the colloquy at the Crim.R. 11 hearing regarding Santiago's dissatisfaction with his attorney, the court's misstatement of the law at the sentencing hearing, Santiago's timely request to his attorney to file a motion to withdraw the plea, and counsel's failure to play an active role at the sentencing when the motion to withdraw the plea was addressed, we conclude that the discussion at the sentencing

---

[4]The attorney who represented Santiago at the sentencing hearing appeared to concede these basic facts, but the letter from the attorney to Santiago was not presented at the hearing.

14

hearing did not constitute a "full and fair hearing" on the motion and that Santiago is entitled to such a hearing on his motion to withdraw his plea. At this hearing, the court can determine the nature of Santiago's dissatisfaction with his attorney and other matters; the voluntary, intelligent, and knowing nature of his plea; and whether Santiago has set forth a reasonable and legitimate basis for the withdrawal of his plea.

{¶ 67} The third, fourth, and fifth assignments of error are sustained in part and overruled in part. We conclude that Santiago is entitled to a hearing on his motion to withdraw his plea, but we do not conclude that he was denied the effective assistance of counsel.

{¶ 68} The judgment of the trial court is reversed, and the matter is remanded for consideration of Santiago's pre-sentence motion to withdraw his no contest plea.

Judgment reversed

and cause remanded.

. . . . . . . . . .

RICE, J., concurs.

HALL, J., concurs in part and dissents in part.

CYNTHIA WESTCOTT RICE, J., of the Eleventh District Court of Appeals, sitting by assignment.

———————————————

HALL, J., concurring in part and dissenting in part.

{¶ 69} I agree with the majority's conclusion, with respect to the first two assignments of error, that the trial court correctly overruled the defendant's motion to

suppress.  However, I disagree with the conclusion that during sentencing the trial court failed to conduct an adequate hearing when the defendant indicated that he wanted to withdraw his former plea.  The majority orders the case remanded for a hearing on the defendant's motion to withdraw his plea for three reasons, none of which in my opinion constitute reversible error.  I would affirm the trial court's denial of the defendant's request to withdraw his plea.

{¶ 70} The first of the majority's reasons for remand is that at the time of the defendant's no-contest plea, when asked by the court whether he was satisfied with the advice and competence of his counsel, the defendant said, "Not really."  In response, the court confirmed that the defendant was making his plea voluntarily.  Thereafter, the court conducted a complete and thorough Crim.R. 11 colloquy, which consists of 14 pages of transcript.  Moreover, when the court inquired whether the defendant had reviewed the plea form with his lawyer, the defendant asked, "Can I go over it again?"  The court responded, "Sure you can. You certainly can."  And the court then confirmed, "[S]o, did you, uh have a chance to go over that with your attorney * * *?"  The defendant replied, "Yes."  Thus, the statement that the defendant was "not really" satisfied with his attorney has been taken factually out of context from the entire plea colloquy.  The plea form, which the court gave the defendant additional time to review with his lawyer, states: "I am satisfied with my attorney's advice, counsel and competence."  Therefore, the "not really" remark by the defendant is also taken out of its legal context.

{¶ 71} There is no requirement that a criminal defendant must develop and share a "meaningful relationship" with his attorney.  *State v. Satterwhite*, Montgomery App. No. 23142, 2009-Ohio-6593, ¶ 41, citing *Morris v. Slappy* (1983), 461 U.S. 1, 13, 103 S.Ct.

16

1610, 75 L.Ed.2d 610.  Although a court must inquire into, and make a record of, specific allegations of an appointed attorney's deficient performance, *State v. Deal* (1969), 17 Ohio St.2d 17, 18, vague or general objections do not trigger a duty to investigate further.  *State v. Carter* (1998), 128 Ohio App.3d 419.  A "not really" comment does not even amount to a vague or general complaint.  In *State v. Simons* (Nov. 22, 2000), Champaign App. No. 99CA5, the defendant moved to dismiss his appointed counsel and identified the reason for the request as a conflict of interest.  This court held that "the mere claim of a 'conflict of interest,' without more, is not a sufficiently specific allegation to trigger the duty to investigate further."  Id at *3.  Likewise, the defendant's "not really" comment here is not a reason to send this case back to the trial court to inquire into what the trial court was not required to inquire into in the first instance.

{¶ 72} The second reason the majority cites to require remand is that at sentencing, during the "hearing" on the defendant's request to change his plea, the trial court made a misstatement about what could constitute trafficking.  The statement "if you get up to a certain amount, it still comes under the trafficking section of the code" was undoubtedly incorrect.  It harkens back to the statutory scheme before S.B. 2 became effective in 1996.  At that time, possession of a drug in a quantity of more than "bulk" amount came under the trafficking section, R.C. 2925.03.  The then-applicable statutory scheme effectively created a presumption that possession of a statutorily defined "bulk" amount constituted trafficking.  See former R.C. 2925.03(A)(4) (defining trafficking as possession of "a controlled substance in an amount equal to or exceeding the bulk amount * * *").  The current trafficking section no longer includes that presumption.  Nevertheless, the phrase "bulk amount" remains in the code at R.C. 2925.01(D).  "Bulk amount" is now used to stratify the

level of drug offenses, except for those involving marijuana, cocaine, LSD, heroin, and hashish, which have their own separate quantity/level classification.

{¶ 73} But the court's misstatement, factually and legally, is of no consequence. Factually, the defendant was indicted for trafficking in that he did "knowingly * * * transport, deliver, prepare for distribution * * * Crack Cocaine" in an amount of ten or more grams but less than 25 grams, a felony of the second degree. He admitted that the 13 grams of crack found in the glove box of the car were his.  He had gotten the crack to make a little extra money for the holidays.  The drugs had been "fronted" to him.  He knew two people in Dayton who would help him get rid of it.  His only denial was that he was not going to sell the drugs in Troy, Ohio.  These statements, which the trial court found to be admissible, and which we affirm, are sufficient to implicate the defendant in trafficking.

{¶ 74} The legal import of the trial court's misstatement is that it was made during the hearing on the request to withdraw the plea, not during the Crim R. 11 colloquy when the defendant might have relied on it before making a knowing and voluntary plea.  The defendant had made that choice weeks earlier after a full, complete, and accurate plea. And the defendant knew that the state claimed that he was going to sell the drugs because that evidence was addressed at the motion to suppress.  Factually and legally, the misstatement did not prejudice the defendant.

{¶ 75} This leads to the third reason for the majority's remand: that the hearing on the request to withdraw the plea was inadequate.  A hearing on a request to withdraw a plea at the time of sentencing need be no more than giving the defendant or counsel the opportunity to explain the basis for the request.  Time and again, this court and other courts of appeals have found a hearing on a motion to withdraw a plea to be adequate

18

when it consisted of no more than a brief opportunity for the defense to state the reasons why the defendant wanted to withdraw his plea. *State v. Forest*, Montgomery App. No. 19649, 2003-Ohio-1945, citing *State v. Holloman* (June 22, 2001), Greene App. No. 2000CA82, and *State v. Mooty* (Aug. 31, 2001), Greene App. No. 2000 CA 72, 2001 WL 991976; see also *State v. Griffin*, Cuyahoga App. No. 82832, 2004-Ohio-1246; *State v. Hairston*, Franklin App. No. 07AP-160, 2007-Ohio-5928; *State v. Eversole*, Erie App. No. E-05-073, 2006-Ohio-3988. The upshot of these cases is that a hearing to withdraw a plea can be brief, consisting only of the defendant having an opportunity to state reasons for withdrawal and needing to be no more than necessary to address the merits of the request.

{¶ 76} Here, Santiago was given an opportunity to explain his reasons for wanting to withdraw his plea. He gave four reasons: (1) "They charged [him] with trafficking," the factual basis of which he had admitted to the police, (2) he never signed his police statement, although a signed statement is not required and the motion to suppress indicates that his statement was oral, (3) an unidentified "somebody" he talked to on the phone told him to plead not guilty, and (4) he had been doing a lot of reading. After hearing these reasons, the court concluded that the defendant had experienced no more than a change of heart: "[O]n your oral request to withdraw your former plea of no contest, uh, based upon the factors that you have indicated to me here, Mr. Santiago, I will overrule those. Unless you have some more that you want to give me?" Notably, dissatisfaction with counsel, one of the majority's reasons for remand, is not one of the reasons Santiago raised as a basis to withdraw his plea.

{¶ 77} Finally, the majority is critical of counsel for not playing a more active role in the withdrawal request. It was counsel who brought to the court's attention that the

19

defendant had expressed a desire to withdraw his plea.  But it was apparent that counsel believed that the plea was a "good plea, it was freely and voluntarily given."  Taking a more active role would be tantamount to arguing what counsel had evaluated as a meritless or frivolous motion, which we routinely do not expect counsel to do in our *Anders* cases.

{¶ 78} For the foregoing reasons, I would affirm the trial court's decision overruling the defendant's request to withdraw his plea as nothing more than a change of heart.

_____