[Cite as *State v. Brown*, 2016-Ohio-1258.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 26826 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-307 |
| | : | |
| LOREN BROWN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1} The State of Ohio appeals from the trial court's August 28, 2015 decision and

entry sustaining in part and overruling in part a suppression motion filed by defendant-appellee Loren Brown.[1]

{¶ 2} In its sole assignment of error, the State contends the trial court erred in finding that a police officer lacked reasonable, articulable suspicion that Brown had been driving under the influence of alcohol to warrant administering field-sobriety tests.

{¶ 3} The record reflects that Miamisburg Police Officer Scott Davis was dispatched to a Red Roof Inn around 8:00 a.m. on January 17, 2015 on a report of a car crashing into the building. Davis had almost 24 years of law enforcement experience as a patrol officer, has participated in advanced DUI training, and has arrested "hundreds and hundreds and hundreds of OVI drivers." (Hearing Tr. At 26). Upon arriving, he spoke to eyewitness Julie Kirk. She reported having seen Brown back his car into a semi-truck before accelerating forward over a parking block and into the wall of a motel room. According to Kirk, Brown then drove around the building before parking his car next to the room he hit.

{¶ 4} After speaking to Kirk, Davis went to Brown's motel room, which was next door to the damaged room. With Brown's consent, Davis entered the room. He noticed several beer bottles throughout the room. Brown admitted that he and others had been drinking the night before, but he claimed not to have consumed any alcohol in the past eight hours. Although Brown's speech was not slurred, Davis noticed that his eyes were glassy, watery, and bloodshot. Davis also smelled alcohol on Brown's person and noted

---

[1] On October 16, 2015, Brown filed a notice of cross-appeal. On the State's motion, this court dismissed the cross appeal in a November 24, 2015 decision and entry. As a result, the matter is before us only on the State's September 3, 2015 notice of appeal, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), from the trial court's suppression ruling. We note that the State's opening appellate brief, filed on November 6, 2015, incorrectly identifies the State as the appellee rather than the appellant.

that his balance seemed "uncoordinated." Brown admitted driving the car at issue. He claimed he did not know he had hit the semi-truck. He admitted driving over the parking block and into the motel room but stated that his gas pedal had gotten stuck.

{¶ 5} Davis next spoke to Peter Mense, an occupant of the motel room that Brown's car had hit. Mense told the officer that the occupants of Brown's room had thrown a party there the previous night. Mense also stated that about 30 minutes before the car hit his room, Brown had started "banging" on his door. When Mense opened the door, Brown apologized and said he was at the wrong room. Mense reported that Brown was "off kilter, disheveled and actually leaning against the doorframe." After Brown's car struck Mense's room, a passenger, Devon Cane, exited the car and approached Mense. According to Mense, Cane stated that Brown "had been drinking last night" and "was probably still drunk from the night before." Davis next talked to Cane, who stated that he and Brown had celebrated Cane's 21st birthday the night before. After going to a nightclub, they returned to the motel room and had a party there.

{¶ 6} Brown subsequently refused to submit to a portable Breathalyzer test. After being advised of his *Miranda* rights, he falsely identified himself as Terry Lee Johnson. Davis then administered various field-sobriety tests to Brown. Based on Brown's performance on the tests and the other information that he possessed, Davis arrested Brown for operating a vehicle while under the influence of alcohol (OVI). Thereafter, Brown was interviewed by another officer and admitted his true identity.

{¶ 7} On April 3, 2015, a grand jury returned a 21-count indictment against Brown on charges including OVI (five prior within 20 years), vandalism, evidence tampering, motor-vehicle title violations, and multiple counts of tampering with records and identity

fraud. The charges stemmed from Brown's OVI arrest and a resulting investigation. Brown subsequently filed a suppression motion in which he sought to suppress, among other things, the field-sobriety test results. Following a hearing, the trial court sustained the motion in part and overruled it in part. As relevant here, the trial court found that Davis lacked reasonable, articulable suspicion that Brown had driven while under the influence of alcohol to justify administering field-sobriety tests. Therefore, the trial court suppressed the test results and found that, without them, police lacked probable cause to arrest Davis for OVI.

{¶ 8} In its sole assignment of error, the State challenges the trial court's finding that Davis lacked reasonable, articulable suspicion of driving under the influence when he administered field-sobriety tests to Brown. "Whether an officer had a reasonable, articulable suspicion to administer field-sobriety tests is a 'very fact-intensive' determination." *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 13 (2d Dist.), quoting *State v. Wells*, 2d Dist. Montgomery No. 20798, 2005-Ohio-5008, ¶ 9. "Reasonable suspicion entails some minimal level of objective justification * * *[,] something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-57, 591 N.E.2d 810 (2d Dist.1990), citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "We determine the existence of reasonable suspicion of criminal activity by evaluating the totality of the circumstances, considering those circumstances 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Santiago* at ¶ 13, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio

St.3d 86, 87–88, 565 N.E.2d 1271 (1991). Although we defer to the trial court's factual findings supported by the record, "[w]hether articulable suspicion exists for the officer's conduct is a question of law and we review the trial court's action 'de novo' or independently." *State v. Van Hoose*, 2d Dist. Montgomery No. 18287, 2000 WL 1838764, *3 (Dec. 15, 2000), citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶ 9} In finding that Davis lacked reasonable, articulable suspicion of driving under the influence when he administered Brown's field-sobriety tests, the trial court reasoned:

Unquestionably, because of the very nature of the accident—Brown driving his car over the parking block and into the motel room—Officer Davis properly initiated an investigation as to the cause of the accident and to determine if it was alcohol-related. However, as that investigation proceeded—and prior to the administration of the field sobriety tests—Officer Davis developed significant facts and information that militated against reasonable suspicion that Brown had been driving under the influence.

Brown's speech wasn't slurred; he didn't walk with a stagger; he had only a faint or light odor of alcohol on his person, and he didn't have an odor of alcohol on his breath.

Brown told Davis it had been eight hours since he had consumed any alcohol. This was corroborated by Devon Cane, who told Peter Mense that "he [Brown] had been drinking last light." Mense himself reported to Officer Davis that "they had a party over there last night" in Brown's room.

Cane did make the statement to Peter Mense that Brown "was probably still drunk from the night before." However, this was Cane's subjective personal opinion.

And while Brown's eyes were "glassy, watery, red, bloodshot"—a "clue" that a person might be impaired—Officer Davis conceded that he has observed persons with glassy eyes in the early morning whom he did not suspect of impaired driving.

Finally, while he had been trained to do so, Officer Davis failed to ask Brown how many drinks he had consumed.

(Doc. #41 at 24-25).

{¶ 10} Based on the foregoing reasoning, the trial court held that "[a]t the point he decided to administer the field sobriety tests Officer Davis had an inchoate hunch—not reasonable articulable suspicion—that Brown had been driving under the influence." (*Id.* at 25). Therefore, the trial court suppressed the test results and held that they could not be considered in determining whether police had probable cause to arrest Brown for OVI. (*Id.*).

{¶ 11} Upon review, we disagree with the trial court's finding that Davis lacked reasonable, articulable suspicion of driving under the influence of alcohol when he administered the field-sobriety tests. In our view, before administering the tests, Davis had ample evidence to support a reasonable, articulable suspicion that Brown remained under the influence of alcohol. Witness Julie Kirk told Davis that she had just seen Brown back into a semi-truck before accelerating forward over a parking block and into a motel room. Brown later claimed that his accelerator had stuck—something Davis never had

seen happen in 24 years as a police officer. Peter Mense, Devon Cane, and Brown all told Davis that there had been a party in Brown's room the night before. In fact, Mense told Davis that Cane had admitted Brown "was probably still drunk" at the time of the accident.[2] Mense also told Davis that Brown had banged on his door approximately 30 minutes before the accident, appearing "off kilter, disheveled and actually leaning against the door frame." Davis also personally observed Brown, who had glassy, watery, bloodshot eyes, smelled of alcohol, and seemed "uncoordinated."[3]

{¶ 12} In our view, the foregoing facts were more than adequate to give Davis reasonable, articulable suspicion that Brown was under the influence of alcohol when he drove into the motel room. This is true even if we accept the trial court's factual findings that Brown's speech was not slurred, that he did not walk with a stagger, and that he had only a faint or light odor of alcohol on his person, not his breath. Although Brown claimed not to have consumed any alcohol for eight hours, Davis was not obligated to accept that assertion as fact. In any event, our conclusion is that the facts known to Davis suggested

---

[2] The trial court referred to this statement by Cane as a "subjective personal opinion." (Doc. #41 at 24). We note, however, that it was an expression by a person who had been "partying" with Brown and who appeared positioned to know whether Brown was still intoxicated. In his reply brief, Brown asserts that Cane's statement to Mense was ambiguous with regard to *who* (Cane or Brown) "was probably still drunk." (Appellee's brief at pg. 6, fn. 5). Having reviewed the hearing transcript, we agree that Cane's statement was not free from possible ambiguity. According to Davis' testimony, Cane approached Mense immediately after the accident and reported that "he had been drinking last night" and that "he was probably still drunk from the night before." (Hearing Tr. at 39). When read in context, however, we believe the most reasonable inference (and the one the trial court drew) is that the "he" being discussed was Brown, not Cane. We reach this conclusion for at least two reasons. First, the most likely object of the conversation between Cane and Mense would have been Brown, who had just driven a car into Mense's motel room. We see no reason why Cane would approach Mense after the accident and announce that Cane, the passenger, was probably still drunk. The only relevant person for purposes of sobriety or drunkenness was Brown, the driver. Second, Cane presumably would have known whether he personally was still drunk and, therefore, would not have needed to speak in terms of probability if he were referring to himself.

[3] The trial court stressed Davis' admission that he had seen people "with glassy eyes in the early morning whom he did not suspect of impaired driving." However, the possibility of an innocent explanation does not negate the existence of reasonable suspicion. *Navarette v. California*, 134 S.Ct. 1683, 1691, 188 L.Ed.2d 680 (2014).

that Brown remained under the influence of alcohol regardless of when he had stopped drinking.

{¶ 13} In opposition to the foregoing conclusion, Brown contends the statements that Julie Kirk, Peter Mense, and Devon Cane made to Davis were admitted at the suppression hearing in violation of the Confrontation Clause of the U.S. Constitution. We find this argument to be without merit. As a threshold matter, we note that Brown failed to raise his Confrontation Clause argument below. In fact, he conceded—correctly in our view—that the Confrontation Clause did not apply at a suppression hearing. (Hearing Tr. at 31). Moreover, Brown did not object to Davis testifying about what Kirk, Mense, and Cane had told him. He objected only to the trial court showing Davis written statements from these individuals and admitting the written statements into evidence. His sole argument was that the written statements themselves did not need to be shown to Davis or admitted into evidence where it had not been established that the officer needed his recollection refreshed. (*Id.* at 28, 40). Brown argued that Davis' independent recollection of what had been said to him would be the "best evidence." (*Id.* at 40). The trial court disagreed, concluding that Davis had the statements in his possession prior to arresting Brown and that they constituted part of the evidence upon which the officer made his decision to arrest. (*Id.* at 29, 41, 43).

{¶ 14} Because Brown did not raise his Confrontation Clause argument below, he has waived the issue for appeal. "We retain the discretion, of course, to consider a waived constitutional argument under a plain-error analysis." *State v. Chapple*, 175 Ohio App.3d 658, 2008-Ohio-1157, 888 N.E.2d 1121, ¶ 14 (2d Dist.). "An error qualifies as 'plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have

been otherwise." *Id.* We see no plain error here. "The right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial proceedings" such as suppression hearings. *State v. McKenzie*, 10th Dist. Franklin No. 11AP-250, 2011-Ohio-5851, ¶ 8, citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *State v. Saunders*, 2d Dist. Montgomery No. 22621, 2009-Ohio-1273, this court found no violation of the Confrontation Clause where, as here, a police officer testified at a suppression hearing about what a witness had told him. This court concluded that the defendant lacked a Sixth Amendment right to "confront" the witness at a pretrial suppression hearing. *Id.* at ¶ 13-15. This court reached the same conclusion again in *State v. Rhines*, 2d Dist. Montgomery No. 24203, 2011-Ohio-3615. In *Rhines*, we found no Confrontation Clause violation where a police officer testified at a suppression hearing about what the victim had told him. *Id.* at ¶ 17-26. Federal courts have reached the same conclusion. *See, e.g., United States v. Lopez-Carillo*, 536 Fed. Appx. 762, 768 (10th Cir.2013) (recognizing that a defendant's rights under the Confrontation Clause are not implicated at a suppression hearing); *Ebert v. Gaetz*, 610 F.3d 404, 414 (7th Cir.2010) (noting that the Confrontation Clause was not implicated when a statement was introduced at the defendant's suppression hearing).

{¶ 15} In arguing that the Confrontation Clause did apply to his suppression hearing, Brown cites cases from other Ohio appellate districts holding that a written statement certifying the functioning of a breath-test machine was non-testimonial and that admission of the statement at a suppression hearing *did not* violate the Confrontation Clause. *See, e.g., State v. Dial*, 2013-Ohio-3980, 998 N.E.2d 821 (3d Dist.). We note,

however, that *Dial* and the other cases cited by Brown simply assumed that the Confrontation Clause even applied to suppression hearings before finding the written statement non-testimonial. Therefore, those cases are not persuasive authority for the proposition Brown is advancing. We note too that, in the course of its opinion, the *Dial* court cited *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), both of which Brown cites here and both of which involved a defendant's right to confront witnesses and the admissibility of out-of-court statements *at trial*, not at a suppression hearing. Therefore, we find Brown's Confrontation Clause argument unpersuasive.

{¶ 16} Based on the reasoning set forth above, we conclude that Davis had reasonable, articulable suspicion that Brown had been driving under the influence of alcohol to warrant administering field-sobriety tests. The State's sole assignment of error is sustained.

{¶ 17} The trial court's judgment is reversed, and the cause is remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Brock A. Schoenlein
Hon. Dennis J. Langer