[Cite as *State v. Payne*, 2024-Ohio-396.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-L-059** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| STEVEN A. PAYNE, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 000874 |

**O P I N I O N**

Decided: February 5, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel*, Assistant Prosecutor, and *Lisa A. Neroda*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa A. Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Steven Payne, appeals the trial court's denying his motion to suppress evidence. He asserts that: (1) there were no specific and articulatable facts to warrant his search and seizure; and (2) the Lake County Sheriff's Department lacked probable cause to arrest him. For the following reasons, we affirm the judgment of the Lake County Court of Common Pleas.

**Procedural History**

{¶2} On September 30, 2022, the Lake County Grand Jury indicted Appellant on seven counts: (1) Aggravated Possession of Drugs, a third-degree felony in violation of R.C. 2925.11 with a forfeiture specification; (2) Obstructing Official Business, a fifth-degree felony in violation of R.C. 2921.31; (3) Possession of Drugs, a fifth-degree felony in violation of R.C. 2925.11; (4) Illegal Use or Possession of Drug Paraphernalia, a fourth-degree misdemeanor in violation of R.C. 2925.14; (5) Criminal Trespass, a fourth-degree misdemeanor in violation of R.C. 2911.21(A)(1); (6) Resisting Arrest, a first-degree misdemeanor in violation of R.C. 2921.33(B); and (7) Disorderly Conduct, a minor misdemeanor in violation of R.C. 2917.11.

{¶3} On December 22, 2022, Appellant pled not guilty to the charges.

{¶4} On December 29, 2022, Appellant moved to suppress the evidence the state sought to introduce at trial (drugs found in his bag following a search after his arrest). In his motion, Appellant asserted the officers had unlawfully arrested him and that there were no specific or articulable facts to warrant his search and seizure.

{¶5} On February 21, 2023, the court held a suppression hearing on Appellant's motion. Deputy Joe Samac, Lieutenant Robert Harps, and Lieutenant Kevin Raico of the Lake County Sheriff's Office testified at the hearing. On February 23, 2023, the court denied Appellant's motion. The trial court, in denying Appellant's motion, found the officers had probable cause to arrest Appellant for Obstructing Official Business.

{¶6} On March 24, 2023, Appellant moved to withdraw his "not guilty" plea and change his plea to "no contest" on counts one and three. The court held a change of plea

2

hearing and, on March 29, 2023, accepted his "no contest" plea. The state dismissed the remaining counts of the indictment.

{¶7}  On May 3, 2023, the court sentenced Appellant to five years on community control.

**Factual History**

{¶8}  Deputy Joe Samac, Sergeant Robert Harps, and Lieutenant Kevin Raico testified to the following facts at the February 21, 2023 suppression hearing:

{¶9}  On August 5, 2022, Deputy Samac arrived at the Lake County Administrative Building to provide security services. Upon arrival, an employee advised him "that there was someone outside screaming obscenities and pacing back and forth with his shirt off."

{¶10}  Deputy Samac proceeded outside and "recognized the gentleman" as Appellant. He then "radioed dispatch" to notify the Lake County Sheriff's Office that he was outside the administrative building with Appellant. Deputy Samac observed that Appellant had all of his personal effects spread about 15 yards down the sidewalk and he was pacing back and forth screaming obscenities about the court and how the court had treated him. Appellant was moving "back and forth to his duffle bag * * * he was pacing back and forth, he appeared to be sweating profusely and he just kept yelling f*** the Court repeatedly and pointing towards the area of the courthouse." Deputy Samac, attempting to approach Appellant in a calm manner, "basically told him hey, while your phone is charging why don't you start getting together your belongings and get moving." Deputy Samac observed that Appellant had become "increasing[ly] agitated * * * He started stepping towards me in a threatening manner and it was at that point where I

3

radioed in and advised dispatch to have my backup step it up." Deputy Samac drew his taser on Appellant and "was yelling commands for [Appellant] to get down on the ground and he was not complying."

{¶11} As Deputy Samac commanded Appellant to obey orders, Lieutenant Raico arrived and "immediately went hands on" with him. Lieutenant Raico pushed Appellant against the wall. Deputy Samac "dry stunned" Appellant with his taser, but it had very little effect. Lieutenant Raico pushed Appellant to the ground. Appellant "was resisting continually, Lieutenant Raico managed to get one cuff secured and then the fight, the fight continued and like 20 seconds later [Appellant] was able to get up with one handcuff on and he proceeded to run from us toward Main Street."

{¶12} Sergeant Harps arrived and pursued Appellant as he ran. Sergeant Harps "told [Appellant] to stop running, to stop. He failed to do so, I pulled out my Taser, I fired one shot towards [him] which did not hit." Appellant then "made an abrupt stop at the corner, put his hands up and faced [Sergeant Harps]." Appellant told Sergeant Harps "to not to tase him again." Sergeant Harps instructed Appellant "to get on the ground and he was slowly backing up in the middle of the street and then started to comply with the commands and sat down on the ground and he was able to be cuffed and placed under arrest."

{¶13} After Appellant's arrest, officers searched his bag, which was still located at the administrative building. In it, they found multiple rocks, a white substance believed to be crystal meth, and a syringe.

**Law and Analysis**

{¶14} Appellant timely appealed and raises one assignment of error:

4

{¶15} "The trial court erred by denying the Defendant-Appellant's motion to suppress in violation of his due process rights and rights against unreasonable search and seizure and unlawful arrest as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 14 of the Ohio Constitution."

{¶16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court reviews the trial court's application of the law to its factual findings de novo. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100. Accepting the facts as true, the reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Burnside*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶17} Appellant argues that the trial court erred in denying his motion to suppress because: (1) no specific and articulable facts existed to warrant his search and seizure; and (2) the officers did not have probable cause to lawfully arrest him.[1]

---

1. Appellant did not independently assert below or on appeal that the search of his bag was unlawful. Rather, he argued that the bag and its contents were seized pursuant to an illegal arrest and therefore inadmissible "fruits of the poisonous tree." Because he failed to raise the issue, we do not address whether the officers lawfully searched his bag.

5

{¶18} The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, Section 14 of the Ohio Constitution contains virtually identical language. An arrest is "quintessentially a seizure" that is subject to the Fourth Amendment and must be reasonable. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

{¶19} "Whether [an] arrest was constitutionally valid depends * * * upon whether, at the moment the arrest was made, the officers had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment" to the United States Constitution. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

{¶20} "A police officer has reasonable or probable cause to arrest when the events leading up to the arrest, 'viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

{¶21} While probable cause means more than bare suspicion, it means less than evidence that would justify conviction. *State v. Pelsue,* 11th Dist. Portage No. 95-P-0149,

6

1997 WL 286174 (May 23, 1997), quoting *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993); *see also State v. Losey*, 11th Dist. Trumbull No. 94-T-5169, 1996 WL 200569 (Jan. 26, 1996) ("However, just because probable cause may exist, this does not mean that the same quantum of evidence will suffice for a conviction.")

{¶22} We first address Appellant's argument that the officers conducted an investigative stop and did not have specific and articulable facts to warrant Deputy Samac's "search and seizure" of Appellant prior to arresting him.

{¶23} An investigative stop is a detention in which "a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). In assessing that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The standard against which the facts are judged must be an objective one: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.*

{¶24} The officers here did not conduct an investigative stop. Deputy Samac did not "stop" Appellant to "investigate" his unusual behavior. Rather, he encouraged Appellant to gather his belongings and "move on." Appellant had an opportunity to leave, but refused to. Prior to his arrest, the Officers did not search Appellant or his belongings. The Officers also did not initially "seize" or "detain" Appellant; they asked him to leave.

Case No. 2023-L-059

{¶25} While the interaction began with a request for Appellant to leave the area of the administrative building, ultimately (and there is no dispute that) the officers arrested him. At bottom, an "arrest" is a substantial intrusion on a person's Constitutionally protected liberty interests. *State v. Santiago*, 195 Ohio App. 3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 22 (2d Dist.). The question of precisely when the arrest occurred is not insignificant here since Appellant argues there was no probable cause for the arrest when it was made.

{¶26} In Ohio, an arrest has several elements, one of which is an actual or constructive seizure or detention of the person. *State v. Barker*, 53 Ohio St. 2d 135, 139 (1978). Here, the evidence is clear that no one detained or seized Appellant at least up to the time Deputy Samac drew his taser and began ordering Appellant to put his hands up and get on the ground. While those actions may suggest a "constructive seizure," we also have the Deputy's unrebutted testimony that he took them in response to Appellant's approaching him in a "threatening manner." That does not clearly evince an intent to arrest (which is another of the elements of an "arrest" in Ohio) as opposed to an intent to protect himself. *Id.*

{¶27} That said, there likewise is little question that an arrest was in process when Lieutenant Raico arrived at the scene and "went hands on" with Appellant. So, in analyzing whether the officers had probable cause to arrest Appellant, we will consider the evidence of the circumstances at that time.

{¶28} The state asserts probable cause existed to arrest Appellant because "[a]t a minimum, Appellant's actions exemplify a violation of R.C. 2921.31(A), Obstructing Official Business."

8

Case No. 2023-L-059

{¶29} R.C. 2921.31(A) provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶30} The relevant facts and circumstances amply demonstrate that the officers had probable cause to arrest Appellant for Obstructing Official Business. On August 5, 2022, Deputy Samac arrived to perform his official duty to provide security services at the Lake County Administrative Building. An employee notified him upon arrival that Appellant was outside, shirtless, screaming obscenities about a court. Acting within his official capacity, Deputy Samac "calmly" asked Appellant to gather his belongings and "move on." Appellant did neither. He continued to "scream" at Deputy Samac, became "increasingly agitated," and behaved threateningly. From Deputy Samac's objectively reasonable standpoint, the facts and circumstances support that he had probable cause to believe Appellant had purposefully prevented, obstructed, or delayed his performance of, and impeded him in performing, his official duties. While the court did not convict Appellant of Obstructing Official Business, the standard for finding probable cause to execute a warrantless arrest is less than evidence that would justify a conviction. *State v. Pelsue*, 11th Dist. No. Portage 95-P-0149, 1997 WL 286174 (May 23, 1997).

{¶31} The officers therefore had probable cause to arrest Appellant, believing that he was committing, at least, Obstructing Official Business.

{¶32} Appellant's assignment of error is without merit.

{¶33} The judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

Case No. 2023-L-059