[Cite as *State v. Hodge*, 2011-Ohio-5023.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                               :

    Plaintiff-Appellee                       :          C.A. CASE NO. 2010 CA 11

v.                                          :          T.C. NO.   TRC0907537

BRUCE HODGE                                 :          (Criminal appeal from
                                             Municipal Court)
    Defendant-Appellant                      :

                                                         :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    30th    day of    September   , 2011.

. . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, Assistant Fairborn Prosecutor, 510 West Main Street, Fairborn, Ohio 45324
        Attorney for Plaintiff-Appellee

MICHAEL T. COLUMBUS, Atty. Reg. No. 0076799, 2100 First National Plaza, 130 W. Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Bruce Hodge was found guilty by a jury of operating a vehicle under the influence of drugs or alcohol (OVI), refusing to submit to a chemical test to determine whether he was under the influence of alcohol or drugs when he had a prior conviction of

OVI within twenty years, and driving under suspension.   He appeals from his convictions.

{¶ 2}   On July 21, 2009, Hodge was stopped for driving under suspension after a police officer ran a routine check of his license plate.   During the stop, police officers detected an odor of an alcoholic beverage and observed other indicia that Hodge was under the influence of drugs or alcohol. They conducted one field sobriety test and took Hodge to the police station jail, where he refused to submit to a breathalyzer test.   Hodge was cited for OVI (with two prior convictions), for refusing to submit to the test, and for driving under suspension.

{¶ 3}   The charges were tried to a jury in the Fairborn Municipal Court, and Hodge was found guilty on all three charges.   The OVI charge and refusal to submit to a chemical test charge   merged.   The trial court sentenced Hodge to concurrent sentences of 365 days in jail for the OVI and 180 days for driving under suspension, with 180 days and 170 days suspended, respectively, on the condition that he have no similar violations for five years. His driver's license was suspended for five years, and he was fined $850.   Hodge appeals from his convictions, raising two assignments of error.   We address the assignments in the order that facilitates our discussion.

{¶ 4}   The second assignment of error states:

{¶ 5}   "THERE EXISTED INSUFFICIENT INDICIA OF IMPAIRMENT AND THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 6}   Hodge contends that his conviction for OVI was supported by insufficient evidence and was against the manifest weight of the evidence.

**{¶ 7}** An argument based on the sufficiency of the evidence challenges whether the State presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins* (1999), 78 Ohio St.3d 380, 386. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

**{¶ 8}** In contrast, when reviewing a judgment under a manifest-weight standard of review "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

**{¶ 9}** At trial, the State offered the following evidence:

**{¶ 10}** On July 21, 2009, Fairborn Police Officer Brian J. Neiford "conducted a random BMV inquiry on the license plate" of a vehicle while it was parked outside the Sugar Melons bar. As a result of the inquiry, Officer Neiford discovered that the owner of the car, Bruce Hodge, was under a "failure to reinstate" suspension of his driver's license. When a man matching Hodge's description drove the vehicle away from the bar, Officer Neiford

made a traffic stop. He did not observe any other traffic violations before making the stop.

{¶ 11} When Officer Neiford questioned Hodge about the suspension, Hodge presented a paper stating that he had driving privileges to and from work and Alcoholics Anonymous meetings; Hodge claimed that he was on his way to an AA meeting. The paper indicated that Hodge was not allowed to consume alcoholic beverages before driving under the privileges. Officer Neiford's computer did not indicate that Hodge had been granted any driving privileges.

{¶ 12} Officer Neiford detected "a slight odor of alcoholic beverages on or about" Hodge. He also observed that Hodge's eyes were "bloodshot and glassy," that his face was "flushed," and that his speech was "slow and deliberate" and "appeared to be slurred." Officer Neiford recognized all of these factors as indicators of intoxication. Officer Neiford arrested Hodge for driving under suspension and then conducted a horizontal gaze nystagmus (HGN) test. Neiford observed all six indicators of intoxication during the HGN test.

{¶ 13} Hodge became more argumentative and uncooperative as the encounter continued. Officer Neiford testified that he did not take the handcuffs off of Hodge to conduct more field sobriety tests because of Hodge's belligerence and insults. Neiford also testified that Hodge asked the same questions repeatedly, even after the questions had been answered. After Officer Neiford got into the cruiser with Hodge and began to transport him to the jail, Neiford smelled a stronger odor of an alcoholic beverage. Realizing that he would be arresting Hodge for OVI in addition to driving under suspension, and because department policy called for conducting an inventory and towing a car when an arrest for

OVI is made, Officer Neiford returned to Hodge's car to inventory its contents and arrange for the towing. After the vehicle was towed, Officer Neiford transported Hodge to jail.

{¶ 14} Officer Penrod responded as backup after Neiford stopped Hodge. Officer Penrod testified that he had detected an odor of an alcoholic beverage when he approached Hodge, that Hodge's eyes had been watery and bloodshot, and that his speech had been slurred, but not severely. Officer Penrod testified that, in his opinion, Hodge had been "under the influence, intoxicated."

{¶ 15} Finally, Steven Barker, who worked at the Fairborn jail and processed Hodge the night of his arrest, testified that he "smelled a strong odor of alcohol" on Hodge at the jail. Barker also observed slurred speech, argumentativeness, and agitation.

{¶ 16} Hodge did not testify and did not call any witnesses at trial, but his attorney cross-examined the State's witnesses about their observations and, with respect to Officer Neiford, his compliance with police procedures in conducting the HGN test. Regarding the HGN test, Officer Neiford acknowledged that an officer is supposed to be "kind of on level" with a person when conducting the test. He acknowledged that he (Officer Neiford) had been standing outside the cruiser and Hodge had been sitting in the backseat of the cruiser when the test was conducted. When questioned about whether this procedure violated his training and "the rule," Officer Neiford stated that he was "unaware" that the rule addressed this issue and stated, "[i]f the person is taller or shorter than you, it's going to be the same thing." He also stated that the manner in which he had conducted the HGN test was consistent with his training. Hodge also played the videotape of the traffic stop for the jury, to refute the State's evidence that his speech had been slurred.

{¶ 17} Hodge was convicted under R.C. 4511.19(A)(1)(a) and (A)(2). Violations of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2) are both classified as the offense of operating a motor vehicle under the influence of alcohol. For certain repeat offenders, R.C. 4511.19(A)(2) adds the additional element of refusing to submit to a chemical test. The distinction between these offenses is that the minimum, mandatory jail terms are greater for a violation of R.C. 4511.19(A)(2) than they are for a violation of R.C. 4511.19(A)(1)(a). See *State v. Turner*, Portage App. No. 2007-P-0090, 2008-Ohio-3898, ¶42.

{¶ 18} R.C. 4511.19(A)(1)(a) states that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, *** [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(2) further provides that a person who has been previously convicted of OVI within twenty years shall not operate a vehicle under the influence of alcohol or drugs and shall not, upon being asked by a law enforcement officer to submit to a chemical test or tests and being advised by the officer of the consequences of refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶ 19} Accordingly, to establish the violation of R.C. 4511.19(A)(2), the State was required to prove (in addition to the prior conviction) that Hodge had operated a vehicle under the influence of drugs or alcohol and that he had refused to submit to a chemical test. Hodge contends that, "[a]bsent the improperly conducted and prejudicial HGN test results, the facts do not support a finding of impairment." We disagree.

{¶ 20} Even if the jury had disregarded the result of the HGN field sobriety test based on Hodge's suggestion, through cross-examination, that the results of the test were

unreliable, there was evidence from which the jury could have concluded, beyond a reasonable doubt, that Hodge was guilty of OVI. Two police officers testified to numerous physical and behavioral indications of intoxication, including the odor of an alcoholic beverage, slurred speech, bloodshot eyes, argumentativeness, and failure to comprehend or retain answers to questions. The HGN test provided further support for the officers' conclusion that Hodge was under the influence of alcohol, but it certainly was not the only evidence pointing to Hodge's intoxication. The evidence was legally sufficient to support Hodge's conviction.

{¶ 21} Hodge also argues that his conviction was against the manifest weight of the evidence. He claims that Officer Neiford "contradicted [him]self as to when and why he decided to charge" Hodge with OVI and that it "seems evident that [Neiford's] dislike for [Hodge] was the reason for the OVI charge."

{¶ 22} There were some inconsistencies in Officer Neiford's testimony about when he decided to arrest Hodge for OVI, which necessitated impounding Hodge's car. And Officer Neiford acknowledged that Hodge had accused him of "planting some things" in Hodge's car and of "harassment," and that these accusations "got under [his] skin." But Officer Neiford denied charging Hodge with OVI because he was angry with Hodge. Neiford was cross-examined about the inconsistencies in his testimony. The jury was in the best position to assess the credibility of the witnesses' testimony and to resolve conflicts in the evidence. Based on the evidence presented, the jury did not clearly lose its way or create a manifest miscarriage of justice when it convicted Hodge. Thus, his conviction was not against the manifest weight of the evidence.

**{¶ 23}** The second assignment of error is overruled.

**{¶ 24}** Hodge's first assignment of error states:

**{¶ 25}** "FAILURE TO MOVE TO SUPPRESS THE HORIZONTAL GAZE NYSTAGMUS TEST RESULTS RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL."

**{¶ 26}** Hodge claims that he was denied the effective assistance of counsel because counsel did not move to suppress the results of the HGN test conducted when he was stopped by the police.

**{¶ 27}** Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook* (1992), 65 Ohio St.3d 516, 524. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *Id.* at 524-525.

**{¶ 28}** Hodge claims that his counsel was ineffective in failing to seek suppression of the HGN test results because Officer Neiford's conduct was "not remotely in substantial

compliance with the applicable regulations."

{¶ 29} The State did not rely exclusively on the HGN field sobriety test to prove that Hodge had been under the influence, nor was it required to offer proof that Hodge had failed one or more field sobriety tests. A reasonable jury may conclude that a defendant was under the influence based only on an officer's observations, even if no field sobriety tests or chemical tests were administered. See *State v. Gilleland*, Champaign App. No. 2004 CA 1, 2005-Ohio-659, ¶19, citing *State v. Flynt*, Portage App. No. 2001-P-0116, 2003-Ohio-1391. The State offered evidence from three witnesses that, on the night of the offenses, Hodge exhibited physical and behavioral characteristics consistent with being under the influence. Moreover, although Hodge questioned Officer Neiford about the procedural requirements for conducting the HGN test, Hodge did not offer evidence regarding those requirements, and Officer Neiford did not concede that he had failed to comply with the appropriate procedures for administration of the HGN test.

{¶ 30} We cannot conclude that trial counsel's conduct fell below an objective standard of reasonableness, because the record does not demonstrate that Officer Neiford conducted the HGN test improperly and, therefore, that a motion to suppress would have been sustained. Furthermore, we cannot conclude that Hodge was prejudiced by his attorney's failure to file a motion to suppress as, even without the HGN test result, there was evidence in the record to support the jury's conclusion that he had been driving under the influence. For these reasons, we cannot conclude that there is a reasonable probability that counsel's failure to file a motion to suppress affected the outcome of the case or that Hodge was denied the effective assistance of counsel.

**{¶ 31}** The first assignment of error is overruled.

**{¶ 32}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Betsy A. Deeds
Michael T. Columbus
Hon. Beth W. Root