[Cite as *State v. Tscheiner*, 2017-Ohio-7641.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2016-CA-36 |
| | : | |
| v. | : | Trial Court Case No. TRC-1602115A |
| | : | |
| ANGELA M. TSCHEINER | : | (Criminal Appeal from Municipal Court) |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of September, 2017.

. . . . . . . . . . .

BRITTANY A. DOGGETT, Atty. Reg. No. 0090704, Assistant Fairborn Prosecuting Attorney, 510 West Main Street, Fairborn, Ohio 45324
  Attorney for Plaintiff-Appellee

BARRY S. GALEN, Atty. Reg. No. 0045540, 22 South St. Clair Street, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Angela Tscheiner, appeals from her convictions and sentences, following a jury trial, of Driving While Under the Influence of Alcohol or Drugs ("OVI") in violation of R.C. 4511.19(A)(1)(a), and OVI in violation of R.C. 4511.19(A)(2), both first-degree misdemeanors.[1]  The trial court also found Angela guilty of Improper Starting/Backing, in violation of R.C. 4511.38, a minor misdemeanor.

{¶ 2} In support of her appeal, Angela contends that the trial court erred in denying her motion to suppress evidence.  She further contends that she was deprived of a fair trial due to the trial court's failure to include a jury instruction that she requested.  Finally, Angela contends that her convictions were against the manifest weight of the evidence.

{¶ 3} After reviewing the record, we conclude that the assignments of error are without merit.  The assignment of error relating to denial of a motion to suppress evidence cannot be considered because Angela failed to file a transcript of the suppression hearing.  Furthermore, the trial court did not err in refusing to instruct the jury regarding the credibility of police officers.  The court provided general instructions on witness credibility, and courts may not single out particular witnesses or groups of witnesses when instructing on credibility.  Finally, Angela's convictions for Driving Under the Influence of Alcohol in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2) were not against the manifest weight of the evidence.  Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

---

[1]  For purposes of convenience, we will refer to Appellant by her first name.

{¶ 4} On March 15, 2016, Fairborn Police Officer, John McGuire, was patrolling in the southwest section of the City of Fairborn. McGuire was in uniform and in a marked cruiser. Shortly after 7:00 p.m., McGuire and an assisting officer, Officer Osburn, were dispatched on a call of a possible "hit-skip" concerning a black-colored vehicle leaving the scene of an accident in the 1700 block of Rice Blvd. According to dispatch, the accident had just occurred and the black vehicle was leaving the area.

{¶ 5} As McGuire arrived at the location, he saw a sign that had been struck at 1739 Rice Blvd., and observed the described vehicle, a black sedan, pulling out of a nearby driveway and proceeding north towards Kauffman Avenue, away from the crash location. McGuire activated his emergency lights and conducted a traffic stop.

{¶ 6} When McGuire approached the vehicle, he asked the driver (later identified as Angela Tscheiner), if she had been involved in a car crash. Angela said yes, and explained that she had hit a sign. She said that she had just come from a friend's house and was going to a nearby Valero gas station to purchase drinks for the rest of the guests. McGuire asked Angela if she were planning to call the police, and received no response.

{¶ 7} McGuire explained to Angela that because a hit-skip was an arrestable offense and she was from out of the county, the department's policy was to take people into custody and take them to the jail to be processed. He explained that she would not be required to post bond for a traffic violation, but would have to be processed at the jail.

{¶ 8} When Angela was in her car, McGuire did not observe any indicators that Angela had been drinking. Her color and eyes were normal, and her clothes were orderly. However, when Angela got out of the car, McGuire detected a moderate smell of alcohol coming from her person. He also observed her walk for about 30 to 40 feet,

and she was swaying back and forth and having a difficult time walking a straight line.

{¶ 9} From where he initiated the stop, McGuire was able to see the speed limit sign that had been struck. Rather than standing erect, the sign was knocked over and was completely flipped. After seeing Angela swaying and smelling the alcohol, McGuire asked if she had anything to drink that day. Angela explained that she had three drinks at a friend's house. In view of these factors, McGuire decided to administer field sobriety tests, and asked Angela if she would take the tests. She consented to do so.

{¶ 10} The first test was the horizontal nystagmus test ("HGN"), during which McGuire observed six out of six indicators of being under the influence of alcohol. When McGuire attempted to administer the next test, the one-legged stand, Angela said she had problems with her knees that would prevent her from standing on one leg. Due to concerns over Angela's safety, McGuire decided not to conduct that test.

{¶ 11} The third test was the walk-and-turn test. Angela told McGuire that she was not certain she could do that test, but would try. Where the test was conducted, the pavement was flat and straight. During this test, Angela exhibited five of nine clues; a finding of two clues indicates that a person is under the influence of alcohol. The observed clues were as follows: (1) Angela started to do the test before McGuire finished the instructions; (2) she had to use her arms to steady herself and maintain balance while in the starting position; (3) she was unable to step in a heel to toe manner; (4) she had to stop to steady herself; and (5) she had to use her arms to steady herself as she walked.

{¶ 12} Based on the indicators shown in these tests, Angela's admission of having had some drinks, the driving behavior in running into the sign, the fact that Angela left the scene, and the odor of alcohol, McGuire decided to arrest Angela for OVI. He then

informed her of his decision to arrest her, handcuffed her, and put her into the back seat of his cruiser. After completing an inventory of the vehicle, McGuire checked Angela's driving record and discovered that she had two fairly recent OVI convictions. He, therefore, was required to remove the vehicle's license plates and place a police hold on the vehicle.

{¶ 13} While the field sobriety tests were being administered, Angela stated multiple times that she had to use the restroom. McGuire told her that she would be able to use the restroom once they got to the jail. After they arrived at the jail, a jailor patted Angela down and searched her. McGuire then read Angela a copy of Bureau of Motor Vehicles ("BMV") form 2255, which is a state BMV form that has to be completed for OVI arrests. The form outlines the charge, the possibility of increased penalties under certain conditions, and the fact that refusal to submit to a chemical test would result in license suspension. After going through the form, McGuire asked Angela to submit to a breathalyzer test, but she refused. She confirmed that she was refusing, and also refused to sign the BMV form.

{¶ 14} Several minutes later, McGuire was informed by a jailor that Angela had changed her mind and did want to submit to a test. He refused to allow her to take a test, because she had already refused. In addition, McGuire's shift had just begun, the beginning of his shift was the busiest time, and he had other obligations to which he had to attend.

{¶ 15} In addition to the violations noted above, Angela was charged with a violation of R.C. 4549.02 (Failure to Stop After an Accident), also a first-degree misdemeanor. On March 18, 2016, defense counsel entered an appearance and also

filed a plea of not guilty on Angela's behalf, requests for discovery and a pretrial conference, and a waiver of speedy trial rights. On July 5, 2016, Angela filed a motion to suppress evidence, which was overruled in August 2016, following a hearing.

{¶ 16} Subsequently, on October 5, 2016, the court held a jury trial. The State presented testimony from Officers McGuire and Osburn. Officer McGuire testified as outlined above. Officer Osburn testified about photographs he had taken and damage to Angela's bumper, which was minor, consisting of a scratch that was one to two inches long, with some paint chipped off. While Osburn did not speak with Angela, he observed her and indicated her speech was slurred and her balance appeared uneasy. He also noted a moderate odor of alcohol.

{¶ 17} Angela presented testimony from four witnesses who had contact with her shortly before the traffic stop. Additionally, Angela testified on her own behalf. She indicated that she had two beers that day during lunch, which lasted from approximately noon until 2:00 p.m. She then cleaned someone's house for about three hours, during which time she did not consume alcohol. Between 6:00 and 6:30 p.m., she arrived at an address on Rice Blvd. where there is a get-together every week of card players. Although Angela lived in Cincinnati, Ohio, she went to this get-together two to four times a month, and turned around in the same driveway every time. On this particular occasion, she misjudged the speed limit sign and hit it. She then pulled in the driveway and went in the house.

{¶ 18} While in the house, Angela talked to some of the people there, and was under the impression that she had 24 hours to report the incident. Angela then decided to go to the store to get some diet drinks for the party. Because she did not know how

long the police would take to arrive, she decided to go to the store first and call the police after she got back. As she pulled out of the driveway, she ran into Larry West, who was arriving for the card game. She talked to him briefly, and as their conversation ended, the police arrived and stopped her.

{¶ 19} Angela told the officer immediately that she had hit the sign. She told the officer that she had three beers that day. However, she stated at trial that she actually only drank two of them because the man whose house she was cleaning arrived at the restaurant before she had time to drink her third beer. She then left the restaurant and followed that man to his house, as she did not know where he lived.

{¶ 20} Angela testified that she was not impaired by those two beers. She indicated that her physical issues, including her knee problems, made it difficult to stand still in one spot. She stated that she performed the walk-and-turn test despite her knee problems because she had to use the bathroom and wanted to get the test over with in a hurry. She also said that she initially refused the breathalyzer test because she was so upset and could not believe what was happening. No more than five minutes later, she begged Officer McGuire and another person at the jail to let her take the test, because she wanted to prove that she was innocent and was not impaired or drunk. Although she begged them repeatedly, they refused to allow her to take the test.

{¶ 21} The four witnesses testifying on Angela's behalf were at the house for card games. They all indicated that they saw no signs of intoxication and would have prevented Angela from driving if they had seen any signs of a problem. These individuals were friends of Angela, and had known her many years.

{¶ 22} In addition to the above evidence, the State submitted certified copies of

Angela's prior OVI convictions, which occurred in 2012 and 2015. After the defense rested, the trial court granted a defense motion for acquittal on the charge of Failure to Stop After an Accident. The court concluded that the charge did not fit the circumstances of the incident.

{¶ 23} After hearing the evidence, the jury found Angela guilty of both OVI charges, and the trial court found her guilty of the Improper Starting/Backing charge. The court then sentenced Angela, among other things, to 365 days in jail, with 274 days suspended on condition of no future violations within the next five years, an $850 fine, an alcohol and drug assessment, an alcohol monitor for 60 days following completion of her jail sentence, and a four-year driver's license suspension. Angela timely appealed from her convictions and sentences.

## II. Did the Trial Court Err in Denying the Motion to Suppress Evidence?

{¶ 24} Angela's First Assignment of Error states that:

Appellant's Arrest Flowed from an Illegal Detention, Search and Seizure of Her Person and Evidence Concerning It Should Have Been Suppressed.

{¶ 25} In support of this assignment of error, Angela first argues that Officer McGuire was not entitled to arrest her for a minor misdemeanor. She then contends that McGuire falsely relied on R.C. 4549.02 to seize and arrest her for a crime she did not commit. The basis for this argument is the trial court's decision to grant Angela's Crim.R. 29(A) motion for acquittal on the R.C. 4549.02 charge. According to Angela, the unlawful seizure permitted McGuire to remove her from her car, discover evidence of her alleged

intoxication, and subject her to field sobriety testing, which led to her arrest for OVI.

{¶ 26} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." (Citation omitted.) *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.) *Id.*

{¶ 27} Both Article I, Section 14 of the Ohio Constitution and the Fourth Amendment to the United States Constitution prohibit "unreasonable searches and seizures." *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). However, "a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." (Citations omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. In viewing the propriety of investigative stops, courts consider the " 'totality of the surrounding circumstances.' " *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶ 28} "[A] police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion." (Citation omitted.) *Mays* at ¶ 13. However, "the stop and inquiry must be 'reasonably related in

scope to the justification for their initiation.' "  *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), quoting *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶ 29}** Even if an individual is lawfully stopped, that does "not necessarily give the officer the right to subject [the person] to the further intrusion represented by the administration of field sobriety tests; the officer had to have a reasonable, articulable suspicion that [the defendant] was driving the vehicle while under the influence in order to justify the administration of field sobriety tests."  (Citations omitted.)  *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 11 (2d Dist.). These situations are " 'very fact-intensive.' "  (Citation omitted.)  *Id.* at ¶ 13. Furthermore, the "circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." (Citations omitted.)  *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 30}** In overruling Angela's motion to suppress, the trial court concluded that Officer McGuire had a reasonable, articulable suspicion justifying administration of sobriety tests.  The court attached substantial weight to the fact that the stop sign had been damaged to the extent that it was nearly flat with the ground, and said it would not have found reasonable suspicion absent that fact.  The court's decision did not consider arguments pertaining to the R.C. 4549.02 violation, and we have no idea whether this point was mentioned during the suppression hearing, as the transcript of that hearing has not been filed.  This point was not specifically raised in the motion to suppress that Angela filed.

**{¶ 31}** Because the transcript has not been filed, we cannot consider the merits of

Angela's argument. *See, e.g., State v. Spencer*, 3d Dist. Shelby No. 17-07-05, 2008-Ohio-164, ¶ 8 (noting that appellant has the burden under App.R. 9(B) of transmitting parts of the record, including a suppression hearing transcript, that support his or her argument; in the absence of a transcript, such arguments cannot be considered). *Accord State v. Pearson*, 2d Dist. Montgomery No. 21203, 2006-Ohio-5585, ¶ 20 (refusing to consider suppression argument where hearing transcript was not filed).

{¶ 32} Although we cannot consider the issue, we do note that Angela has not challenged the trial court's finding about the fact that the sign was flattened. The basis of Angela's argument is that the officer lacked a basis for removing her from the car because the charge upon which the officer relied was later dismissed. In particular, Angela contends that there is a notable distinction between R.C. 4549.02, which pertains to accidents occurring on public streets, and R.C. 4549.03, which relates to damage to property that is attached to real property adjacent to a public road.

{¶ 33} As noted, we cannot consider this issue. However, the Supreme Court of the United States did recently hold that reasonable suspicion justifying a stop includes reasonable factual mistakes as well as reasonable mistakes of law. *Heien v. North Carolina*, ___ U.S. ___, 135 S.Ct. 530, 540, 190 L.Ed.2d 475 (2014).

{¶ 34} Based on the preceding discussion, the First Assignment of Error is overruled.

III. Did the Trial Court Err in Refusing to Allow a Jury Instruction on Credibility?

{¶ 35} Angela's Second Assignment of Error states that:

The Trial Court Prejudiced Appellant and Deprived Her of a Fair Trial

in Refusing to Provide Jurors with a Requested Jury Instruction.

{¶ 36} Under this assignment of error, Angela contends that the trial court should have allowed an instruction that she proposed, which stated that the testimony of police officers "should be given no different weight than any other ordinary person." Transcript of Proceedings, p. 192. According to Angela, this instruction is necessary because jurors may improperly credit the testimony of police officers due to the officers' status. Angela argues that such an instruction would have been particularly important in this case, where the officers' testimony was contradicted by several witnesses, who saw no evidence that Angela was intoxicated.

{¶ 37} The trial court declined the requested instruction, and gave the following instruction on credibility:

> You are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence. To weigh the evidence, you must consider the credibility of the witnesses. You will apply the test of truthfulness, which you apply in your daily lives. These tests include the appearance of each witness upon the stand, the manner of testifying, the reasonableness of the testimony, the opportunity that the witness had to see, hear, and know the things concerning which he or she testified, the accuracy of memory, frankness or lack of it, intelligence, interest, and bias, if any, together with all of [sic] facts and circumstances surrounding the testimony. Applying these tests[,] you will assign to the testimony of each witness such weight as you deem proper.
>
> You are not required to believe the testimony of any witness simply

because he or she was under oath.   You may believe or disbelieve all or any part of the testimony of any witness.   It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

Transcript of Proceedings, pp. 208-209.

{¶ 38} The Supreme Court of Ohio has held that "it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge."   (Citation omitted.)   *State v. Scott*, 26 Ohio St.3d 92, 101, 497 N.E.2d 55 (1986).

{¶ 39} As support for her argument, Angela cites *State v. Broadus*, 14 Ohio App.3d 443, 472 N.E.2d 50 (10th Dist.1984), which found error harmless, "even though the trial court should give an instruction as requested to the effect that a police officer is not by virtue of that status deemed to be more credible than any other witness but, instead, his credibility and the weight to be given the testimony is to be judged upon the same standard as other witnesses."   *Id.* at 445.   However, *Broadus* and other cases holding that a special instruction on police credibility should be given were abrogated in *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980.   In *Group*, the Supreme Court of Ohio stressed that such an instruction "runs afoul of the principle" it had imparted in previous cases, i.e., that "a trial judge may not single out a particular witness or group of witnesses to discuss their credibility, since such discussion exerts an undue influence on the jury."   (Citations omitted.)   *Id.* at ¶ 118.

{¶ 40} In addition, the court commented that "[t]he subject of witness credibility was covered in the general jury charge.   The court instructed the jurors that they were the 'sole judges of * * * the credibility of the witnesses and the weight of the evidence' and

that they must consider 'the witness' * * * interest and bias' in judging credibility. Where a trial court gives instructions such as these, which apply equally to all witnesses, there is no need for any special comment or instruction regarding police credibility." (Citations omitted.) *Id.* at ¶ 117.

**{¶ 41}** In the case before us, the trial court gave a general instruction on credibility that applied to all witnesses. This instruction is similar to the one approved in *Group*, and the trial court did not err in refusing to insert a specific instruction on officer credibility. Accordingly, the Second Assignment of Error is overruled.

### IV. Was the Judgment Against the Manifest Weight of the Evidence?

**{¶ 42}** Angela's Third Assignment of Error states that:

Appellant's Conviction Was Against the Manifest Weight of the Evidence.

**{¶ 43}** According to Angela, her convictions were against the manifest weight of the evidence because the evidence of intoxication was very conflicting, as well as uncertain and unreliable. She also argues that the police had an interest in exaggerating or fabricating evidence of her intoxication because her vehicle was subject to forfeiture upon conviction.

**{¶ 44}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. In assessing manifest weight challenges, an appellate court reviews " 'the entire record, weighs the evidence and all reasonable inferences,

considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 45} We have also emphasized that "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). *Accord State v. Flores-Lopez*, 2017-Ohio-690, ___ N.E.3d ___, ¶ 50 (2d Dist.).

{¶ 46} After reviewing the record, we conclude that this is not the exceptional case warranting reversal on manifest weight grounds. Admittedly, conflicts existed in witnesses' testimony, but that is nothing particularly unusual. The testimony of the two police officers, if believed by the jury, was more than sufficient to establish beyond a reasonable doubt that Angela was operating her vehicle "under the influence of alcohol * * *." R.C. 4511.19(A)(1)(a). Furthermore, the fact of the two prior OVI convictions required for a violation of R.C. 4511.19(A)(2) was not disputed.

{¶ 47} "Generally, each 'drunken driving' case is to be decided on its own particular and peculiar facts." *Mentor v. Giordano*, 9 Ohio St.2d 140, 146, 224 N.E.2d 343 (1967). *Accord State v. Rowland*, 2d Dist. Miami No. 89-CA-57, 1991 WL 1676, *3 (Jan. 11, 1991).

{¶ 48} As was noted, Officer McGuire detected a moderate smell of alcohol, and observed Angela swaying and having difficulty walking a straight line. She also admitted telling him that she had three drinks earlier, although her testimony at trial was that she did not actually drink the third drink; she ordered it and left the restaurant before drinking it. Angela did not tell McGuire that at the time, however, nor did she give a time frame within which she had the drinks. Transcript of Proceedings, pp. 75-76, 105, and 171. In addition, McGuire testified about Angela's performance on the HGN and walk-and-turn tests, which revealed numerous indicators that she was under the influence of alcohol. There was no indication that McGuire incorrectly performed the field sobriety tests. Although Angela claims her performance on the walk-and-turn was hampered by her knee problems and weight, she indicated to McGuire at the time that she did not have any problems that would affect the HGN test. *Id.* at pp. 77-78. As noted, she exhibited all six clues on the HGN test.

{¶ 49} And finally, Officer Osburn's testimony supports the conclusion that Angela was operating her motor vehicle while under the influence of alcohol. As noted, "[t]the jury was in the best position to assess the credibility of the witnesses' testimony and to resolve conflicts in the evidence." *State v. Hodge*, 2d Dist. Greene No. 2010-CA-11, 2011-Ohio-5023, ¶ 22.

{¶ 50} Furthermore, the record does not support Angela's argument that the police

fabricated evidence to justify forfeiture of her car. R.C. 4511.19(G)(1)(c)(v) requires courts to order forfeiture of vehicles where an offender has been convicted of two violations of R.C. 4511.19(A) within ten years of the current offense. Assuming for purposes of argument that Officer McGuire knew this, Angela points to no evidence in the record indicating that McGuire was aware of her prior OVI convictions before stopping her. Instead, the evidence was to the contrary.

{¶ 51} McGuire was dispatched to the scene upon a report of a black vehicle that had been involved in a hit-skip. He was also told the vehicle was leaving the area. When McGuire arrived at the location, he saw the described vehicle pulling out of a driveway and continuing north, away from the location of the crash. From all accounts of the matter, including Angela's testimony, the traffic stop and approach to Angela's car occurred nearly simultaneously. In other words, there was no evidence that McGuire had time to obtain information about Angela before he approached her car. Additionally, there was no indication that the caller to dispatch had provided a license plate number or other identifying information that would have allowed McGuire to discover information about Angela's prior convictions.

{¶ 52} McGuire indicated that when he spoke with Angela while she was seated in her car, he was merely investigating the traffic accident and had no indication that she was intoxicated. At that point, because the offense was one for which an individual could be arrested, McGuire intended to take Angela to the jail, pursuant to departmental policy regarding out-of-county residents. He did not even intend to tow the car; in fact, when Angela got out of the car, McGuire was going to walk with her back to the house where she had been so that her friend could pick up the car, thus avoiding a tow. Transcript of

Proceedings, p. 76.

{¶ 53} However, once Angela stepped out of the car, McGuire noticed the odor of alcohol and observed that Angela was swaying and having difficulty walking a straight line. At that point, he decided to inquire further about whether she had been drinking. Upon hearing her response about drinking, together with the other observations, McGuire decided to ask if Angela would be willing to submit to field sobriety tests.

{¶ 54} Only after Angela failed the sobriety tests and was arrested did McGuire check her driving record and discover that she had two prior OVI convictions. In fact, McGuire did not even check Angela's driving record until after the officers had completed inventorying her car. As a result, there is simply no indication that the police were engaged in some type of scheme to deprive Angela of her property.

{¶ 55} Based on the preceding discussion, the Third Assignment of Error is without merit and is overruled.

V. Conclusion

{¶ 56} All of Angela's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

Brittany A. Doggett
Barry S. Galen
Hon. Beth Cappelli